IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-CV-1214 (GLS/RFT) |
| v. | ) | |
| | ) | |
| STATE OF NEW YORK and NEW | ) | |
| YORK STATE BOARD OF ELECTIONS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CONSENT DECREE

Plaintiff United States of America ("United States") initiated this action against the State of New York (the "State") and the New York State Board of Elections ("SBOE") to enforce the requirements of the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 42 U.S.C. §§ 1973ff to 1973ff-7. The United States' complaint alleges a violation of UOCAVA arising from Defendants' failure to transmit absentee ballots to qualified absent uniformed services voters and overseas voters ("UOCAVA voters") in accordance with the terms of the comprehensive plan set forth in New York's approved application for a waiver from UOCAVA requirements. In particular, the United States' Complaint alleges that the Defendants failed to ensure that local election officials transmitted absentee ballots to UOCAVA voters by October 1, 2010. Accordingly, some UOCAVA voters in at least thirteen New York counties will not be provided the time specified under law to receive, mark, and submit their ballots in time to have those ballots counted in the November 2, 2010 Federal general election.

The United States and Defendants, through respective counsel, have conferred and agree that this action should be settled without the delay and expense of litigation. The parties share

the goal of providing UOCAVA voters with sufficient opportunity under Federal law to

participate in the November 2, 2010 Federal general election. The parties have negotiated in

good faith and hereby agree to the entry of this Consent Decree as an appropriate resolution of

the UOCAVA claim alleged by the United States. Accordingly, the United States and Defendants

stipulate and agree that:

1.      This action is brought by the Attorney General on behalf of the United States pursuant

to UOCAVA, as amended by the Military and Overseas Voter Empowerment Act, Pub. L. No.

111-84, Subtitle H, §§ 575-589, 123 Stat. 2190, 2318-2335 (2009) ("MOVE Act"). UOCAVA

provides that absent uniformed services voters and overseas voters shall be permitted "to use

absentee registration procedures and to vote by absentee ballot in general, special, primary, and

runoff elections for Federal office." 42 U.S.C. § 1973ff-1.

2.      This Court has jurisdiction pursuant to 42 U.S.C. § 1973ff-4 and 28 U.S.C. §§ 1345

and 2201.

3.      The Attorney General is authorized to enforce the provisions of UOCAVA, 42 U.S.C.

§1973ff-4, and has brought this enforcement action to ensure that New York's UOCAVA voters

will have sufficient opportunity to receive absentee ballots they have requested and submit

marked absentee ballots in time to be counted for the November 2, 2010 Federal general

election.

4.      Defendant State of New York is responsible for complying with UOCAVA, and

ensuring that validly-requested absentee ballots are sent to UOCAVA voters in accordance with

its terms. 42 U.S.C. § 1973ff-1.

5.      Defendant SBOE has jurisdiction of, and is responsible for, the execution and

enforcement of statutes governing elections and related procedures in New York State, and as

2

such is responsible for the administration of State law affecting voting, and for assuring that elections in the State are conducted in accordance with law. See N.Y. ELEC. LAW §§ 3-104(1), 3-100(1), 3-102(1-17). The principal office of the SBOE is in Albany, New York.

6.      The local election officials throughout New York State are responsible for complying with all New York State laws, rules, and regulations relating to the administration of the election process for the county that they represent.

7.      Pursuant to amendments made by the MOVE Act, UOCAVA requires states to transmit validly-requested ballots to UOCAVA voters not later than 45 days before an election for Federal office when the request is received at least 45 days before the election, unless a hardship exemption is obtained pursuant to Section 102(g) of UOCAVA. 42 U.S.C. § 1973ff-1(a)(8)(A). The 45th day before the November 2, 2010 Federal general election is September 18, 2010.

8.      States can be exempted from the requirement to transmit ballots 45 days in advance of a Federal election if they apply for, and are granted, a hardship waiver from the Presidential designee for UOCAVA, the Secretary of Defense. 42 U.S.C. § 1973ff-1(g). A hardship waiver may be granted if (1) the state submits a comprehensive plan in its application for a hardship waiver that "provides absent uniformed services voters and overseas voters sufficient time to receive absentee ballots they have requested and submit marked absentee ballots to the appropriate State election official in time to have that ballot counted in the election for Federal office," and (2) if the state's primary election date, legal contests causing a delay in generating ballots, or provisions of the state's constitution, make complying with the requirement that ballots be transmitted 45 days in advance of a Federal election an undue hardship. 42 U.S.C. §1973ff-1(g)(2).

3

9.     Where a hardship exemption is granted, UOCAVA requires that states transmit validly-requested ballots to UOCAVA voters in accordance with the provisions of the comprehensive plan upon which the hardship waiver is based.  42 U.S.C. §§ 102(a)(8)(A) & 102(g).

10.     Pursuant to Section 102(g)(2)(B)(i) of UOCAVA, the State of New York applied for a hardship waiver on grounds that New York's September 14, 2010 primary election prohibited the State from complying with Section 102(a)(8)(A).  42 U.S.C. §§ 1973ff-1(a)(8)(A) & (g)(2)(B)(i). Specifically, New York asserted that local election officials could not transmit absentee ballots to UOCAVA voters by September 18, 2010, the 45th day before the November 2, 2010 Federal general election.

11.     Pursuant to Section 102(g)(1)(D) of UOCAVA, the State's hardship application included a comprehensive plan that outlined the steps the State would take to ensure that UOCAVA voters had time to receive, mark, and submit their ballots in time to have the ballot counted.  42 U.S.C. § 1973ff-1(g)(1)(D).  New York's comprehensive plan relied on two key provisions that together created a 45-day period for UOCAVA voters to receive, mark, and submit their ballots: (1) the transmission of absentee ballots to UOCAVA voters on October 1, 2010, 32 days before the November 2, 2010 Federal general election, and (2) the deadline of November 15, 2010, 13 days after the election, for receipt of ballots from UOCAVA voters postmarked by November 1, 2010.

12.     On August 27, 2010, pursuant to its statutory authority, and based on the comprehensive plan set forth in New York's waiver application, the Department of Defense granted the State's request for a hardship exemption.  In its determination letter, the Department of Defense noted the waiver was based "on an understanding that the State of New York will

4

transmit absentee ballots for the November 2, 2010 Federal general election to UOCAVA voters no later than October 1, 2010."

13.     Despite the October 1, 2010 deadline outlined in the comprehensive plan set forth in New York's waiver application, local election officials in New York State nonetheless failed to transmit absentee ballots for the Federal general election to UOCAVA voters by that date in at least thirteen New York counties. Election officials in those counties exceeded the October 1, 2010 deadline for transmitting UOCAVA ballots by periods ranging from four days to nine days.

14.     In Kings County, election officials completed transmitting absentee ballots to UOCAVA voters on or around October 10, 2010.

15.     In New York and Queens Counties, election officials completed transmitting absentee ballots to UOCAVA voters on or around October 9, 2010.

16.     In Bronx and Erie Counties, election officials completed transmitting absentee ballots to UOCAVA voters on or around October 8, 2010.

17.     In Richmond County, election officials completed transmitting absentee ballots to UOCAVA voters on or around October 7, 2010.

18.     In Niagara, Putnam, and Westchester Counties, election officials completed transmitting absentee ballots to UOCAVA voters on or around October 6, 2010.

19.     In Onondaga County, election officials completed transmitting absentee ballots to UOCAVA voters on or around October 5, 2010.

20.     Subsequent investigation by the parties has revealed that additional counties mailed their ballots after October 1, 2010, but no later than October 10, 2010, including Albany, Nassau, and Wayne Counties.

21.    Local election officials in New York have received timely requests for absentee ballots for the November 2, 2010 Federal general election from voters who are entitled to vote by absentee ballot pursuant to the provisions of UOCAVA.

22.    Defendants' failure to ensure that local election officials transmitted absentee ballots by October 1, 2010, as provided by the comprehensive plan in New York's waiver application, violates Section 102(a)(8)(A) of UOCAVA. 42 U.S.C. § 1973ff-1(a)(8)(A).

23.    Under New York law, absentee ballots from UOCAVA voters must be postmarked, or show a dated endorsement of receipt by another agency of the United States government, or in the case of military voters, signed and dated by the military voter and one witness thereto, by November 1, 2010, the day before election day, and received within thirteen days after election day in order to be counted. N.Y. ELEC. LAW § 10-114; 11-212.

24.    To avoid the burdens, delays, and uncertainties of litigation and to efficiently and expeditiously promote the parties' shared goal of providing UOCAVA voters with sufficient opportunity under Federal law to participate in the November 2, 2010 Federal general election, the parties agree that this Court should enter an order requiring that Defendants ensure that local election officials contact by electronic mail all UOCAVA voters for whom local election officials have electronic mail contact information to notify those voters that they may choose to receive their ballots for the November 2, 2010 Federal general election by telefacsimile, electronic mail, or in an electronic, downloadable Portable Document Format (.pdf) through the State's ballot delivery wizard, instead of by postal mail. If the local election officials lack electronic mail contact information for affected voters, but do have telefacsimile contact information for such voters, the Defendants shall ensure that local election officials provide the notification required by this paragraph by telefacsimile. Said electronic mail or telefacsimile communication with

6

these voters shall explain the terms of this agreement. Said communication shall also provide

these voters with instructions on how to access electronically, download, and print their ballots

through the State's online ballot delivery system if the voter so chooses. Said communication

shall also advise all overseas uniformed services voters of the Department of Defense's program

for collection and delivery of return ballots by expedited mail delivery service to local election

officials.

25.     To ensure that New York's UOCAVA voters will have sufficient opportunity under

Federal law to receive absentee ballots they have requested and submit marked absentee ballots

in time to be counted for the November 2, 2010 Federal general election, the parties agree that

this Court should enter an order providing that ballots from all UOCAVA voters qualified to vote

in the State that are executed and postmarked by November 1, 2010, and received by the close of

business on November 24, 2010, will be accepted and tabulated in the final general election

results.

26.     The parties reserve the right to modify this agreement as necessary, and to seek

additional supplemental relief, if information regarding additional UOCAVA violations is

discovered.

WHEREFORE, the parties having freely given their consent, and the terms of the Decree

being fair, reasonable, and consistent with the requirements of UOCAVA, it is hereby

ORDERED, ADJUDGED, AND DECREED that:

(1) SBOE shall ensure that local election officials in New York State take such

steps as are necessary to count as validly cast ballots in the November 2, 2010

Federal general election all those ballots, including Federal Write-in Absentee

Ballots, cast by absent uniformed services voters and overseas voters qualified

7

to vote in the State pursuant to UOCAVA, provided such ballots are executed

and postmarked or show a dated endorsement of receipt by another agency of

the United States government (or in the case of military voters, are signed and

dated by the military voter and one witness thereto) by November 1, 2010,

received by November 24, 2010, and are otherwise valid.  In the event that

local election officials receive more than one ballot from a single qualified

voter, the SBOE will ensure that local election officials resolve any conflicts

according to existing procedures under State law.

(2) SBOE shall ensure that local election officials contact by electronic mail all UOCAVA

voters for whom local election officials have electronic mail contact information to

notify those voters that they may choose to receive their ballots for the November 2,

2010 Federal general election by telefacsimile, electronic mail, or in an electronic,

downloadable Portable Document Format (.pdf) through the State's ballot delivery

wizard, instead of by postal mail.  If the local election officials lack electronic mail

contact information for affected voters, but do have telefacsimile contact information

for such voters, the SBOE shall ensure that the local election officials shall provide

the notification required by this paragraph by telefacsimile.  Said electronic mail or

telefacsimile communication with these voters shall explain the terms of this

agreement.  Said communication shall also provide these voters with instructions on

how to access electronically, download, and print their ballots through the State's

online ballot delivery system if the voter so chooses.  Said communication shall also

advise all uniformed services voters located overseas of the Department of Defense's

program for collection and delivery of return ballots by expedited mail delivery

8

service to local election officials. Said communications shall be made no later than two business days after entry of this Consent Decree.

(3) Upon entry of this Consent Decree, SBOE shall notify the Director of the Federal Voting Assistance Program of the United States Department of Defense ("FVAP") and request assistance in notifying military and other eligible voters of the relief afforded in this order, and coordinate with FVAP as necessary to facilitate such notice.

(4) Upon the entry of this Consent Decree, SBOE shall take the following steps to endeavor to give affected voters notice of the contents of this order: (a) issue a press statement for immediate release, posted immediately on the State's election information website, and distributed as broadly and immediately as practicable to national and local wire services, to radio and television broadcast stations and to daily newspapers of general circulation in the State, including the New York City metropolitan area. The release shall also be distributed to the Federal Voting Assistance Program; the New York Times (http://www.nytimes.com); International Herald Tribune (http://www.iht.com); USA Today International (http://www.usatoday.com); Military Times Media Group (cvinch@militarytimes.com); Overseas Vote Foundation (http://www.overseasvotefoundation.org/intro/); Stars and Stripes (www.estripes.com), and other appropriate news media in the State of New York. The news release shall, at a minimum: (a) summarize this order, including an explanation that the deadline for receipt of the ballot has been extended to November 24, 2010; (b) identify the contests for Federal office

that will be on the ballot on November 2, 2010; (c) notify UOCAVA voters

that they may choose to receive their ballots for the November 2, 2010 Federal

general election by telefacsimile, electronic mail, or in an electronic,

downloadable Portable Document Format (.pdf) through the State's ballot

delivery wizard, instead of by postal mail; and (d) provide appropriate contact

information at the SBOE for assistance.  SBOE shall also prepare and

distribute written public service announcements describing this order for

broadcast on radio and television networks, including but not limited to the

media described above.

(5) SBOE shall provide written certification to counsel of record for the United

States that all absentee ballots validly requested by UOCAVA voters by

October 1, 2010 have been transmitted; such certification shall be provided no

later than three business days after the entry of this order.  This certification

for each county will include:  (a) the number of UOCAVA absentee ballot

requests received prior to September 18, 2010, between September 19, 2010

and October 1, 2010, and between October 1, 2010 and the date each county

completed transmitting those ballots; (b) the number of UOCAVA absentee

ballot requests, by the requested method of transmittal, for all UOCAVA

absentee ballot requests received prior to the date each county completed

transmitting those ballots; and (c) by date, the number of UOCAVA ballots

transmitted and the method of transmittal thereof where the ballot was

requested prior to the date each county completed transmitting those ballots.

(6) SBOE shall file a report with counsel of record for the United States no later than December 17, 2010, concerning the number of UOCAVA absentee ballots, by county, received and counted for the November 2, 2010 general Federal election. The report will set forth the following information, by county, categorized by absent uniformed services voters with APO/FPO addresses or non- US street addresses; uniformed services voters at a street address within the US; and overseas civilian voters:

    a.     The number of absentee ballots from UOCAVA voters received by local election officials before the close of business on November 15, 2010, and counted;

    b.     The number of absentee ballots from UOCAVA voters received and counted after the close of business on November 15, 2010, but prior to the close of business on November 24, 2010;

    c.     The number of absentee ballots from UOCAVA voters received later than the close of business on November 24, 2010; and

    d.     The number of absentee ballots from UOCAVA voters that were not counted in the general election for Federal office, for reasons other than late receipt, and the reasons such ballots were not counted.

(7) The parties acknowledge that, in the absence of a waiver from the Department of Defense, changes in state law, the state election schedule, and/or election

procedures are necessary to prevent future violations of UOCAVA. The

Defendants are committed to exploring the need for future relief, including

possible changes of law or administrative regulation to assure that UOCAVA

voters shall have a fair and reasonable opportunity to participate in future

Federal elections, and to address potential UOCAVA violations arising from

the State's Federal election schedule or election practices. The parties agree to

confer on the progress of these efforts, and Defendants shall provide a status

report to the United States Department of Justice by April 1, 2011.

The Court shall retain jurisdiction over this action to enter such further relief as may be

necessary for the effectuation of the terms of this Consent Decree and to ensure compliance with

Section 102(a)(8)(A) of UOCAVA through December 31, 2012.

12

The undersigned agree to entry of this Consent Decree on October 19, 2010:

For the Plaintiff:

RICHARD S. HARTUNIAN
United States Attorney

*/s/ Barbara Cottrell*
BARBARA COTTRELL - 101411
Assistant United States Attorney
Northern District of New York
445 Broadway, Room 218
Albany, NY 12207-2924
Telephone:    (518) 431-0247
Facsimile:    (518) 431-0249

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

*/s/ Richard Dellheim*
T. CHRISTIAN HERREN JR.
REBECCA WERTZ
RICHARD DELLHEIM
ERNEST MCFARLAND
AMANDA GREGORY
RISA BERKOWER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone:    (202) 307-6552
Facsimile:    (202) 307-3961

For the Defendants:

State of New York:

*/s/ Jeffrey M. Dvorin*
Jeffrey M. Dvorin
Acting Bureau Chief
Albany Litigation Bureau
Office of the Attorney General
The Capitol
Albany, NY  12224-0341
Telephone:    (518) 473-7614
Facsimile: (518) 473-1572

New York State Board of Elections:

*/s/ Kimberly Galvin*
Kimberly Galvin
Special Counsel
New York State Board of Elections
40 Steuben Street
Albany, NY 12207-2109
Telephone:    (518) 474-6367
Facsimile:    (518) 486-4068

13

SO ORDERED this __19__ day of __October__, 2010.


United States District Judge
Gary. L. Sharpe

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br><br>Plaintiff,  )<br> )<br> )<br>v.  )<br> )<br>STATE OF NEW YORK and THE NEW  )<br>YORK STATE BOARD OF ELECTIONS,  )<br> )<br>Defendants.  )<br> )<br> )<br>_____ ) | Case No. 1:10-CV-1214 (GLS/RFT) |

## COMPLAINT

The United States of America alleges:

1.  This action is brought by the Attorney General of the United States ("Attorney General") on behalf of the United States pursuant to the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 42 U.S.C. §§ 1973ff to 1973ff-7, as amended by the Military and Overseas Voter Empowerment Act, Pub. L. No. 111-84, Subtitle H, §§ 575-589, 123 Stat. 2190, 2318-2335 (2009) ("MOVE Act"). UOCAVA provides that absent uniformed services voters and overseas voters ("UOCAVA voters") shall be permitted "to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. § 1973ff-1.

2.  This Court has jurisdiction pursuant to 42 U.S.C. § 1973ff-4 and 28 U.S.C. §§ 1345 and 2201.

3.  The Attorney General is authorized to enforce the provisions of UOCAVA, 42 U.S.C. §1973ff-4, and brings this enforcement action to ensure that New York's UOCAVA voters will have sufficient opportunity to receive absentee ballots they have requested and submit marked absentee ballots in time to be counted for the November 2, 2010 Federal general election.

4.  Defendant State of New York is responsible for complying with UOCAVA, and ensuring that validly-requested absentee ballots are sent to UOCAVA voters in accordance with its terms.  42 U.S.C. § 1973ff-1.

5.  Defendant New York State Board of Elections ("SBOE") has jurisdiction of, and is responsible for, the execution and enforcement of statutes governing elections and related procedures in New York State, and as such is responsible for the administration of State law affecting voting, and for assuring that elections in the State are conducted in accordance with law.  See N.Y. ELEC. LAW §§ 3-104(1), 3-100(1), 3-102(1-17).  The principal office of the New York SBOE is in Albany, New York.

6.  Pursuant to amendments made by the MOVE Act, UOCAVA requires states to transmit validly-requested ballots to UOCAVA voters not later than 45 days before an election for Federal office when the request is received at least 45 days before the election, unless a hardship exemption is obtained pursuant to Section 102(g) of UOCAVA.  42 U.S.C. § 1973ff-1(a)(8)(A).  The 45th day before the November 2, 2010, Federal general election is September 18, 2010.

7.  States can be exempted from the requirement to transmit ballots 45 days in advance of a Federal election if they apply for, and are granted, a hardship waiver from the Presidential designee for UOCAVA, the Secretary of Defense.  42 U.S.C. § 1973ff-1(g).  A hardship waiver may be granted if (1) the state submits a comprehensive plan in its application for a hardship waiver that "provides absent uniformed services voters and overseas voters sufficient time to receive absentee ballots they have requested and submit market absentee ballots to the appropriate State election official in time to have the ballot counted in the election for Federal office," and (2) if the state's primary election date, a legal contest causing a delay in generating ballots, or the state's constitution, make complying with the requirement that ballots be transmitted 45 days in advance of a Federal election an undue hardship.  42 U.S.C. §1973ff-1(g)(2).

2

8. Where a hardship exemption is granted, UOCAVA requires states to transmit validly-requested ballots to UOCAVA voters in accordance with the provisions of the comprehensive plan upon which the hardship waiver is based. 42 U.S.C. §§ 102(a)(8)(A) & 102(g).

9. Pursuant to Section 102(g)(2)(B)(i) of UOCAVA, the State of New York applied for a hardship waiver on grounds that New York's September 14, 2010 primary election prohibited the State from complying with Section 102(a)(8)(A) with respect to the November 2, 2010 general election 42 U.S.C. §§ 1973ff-1(a)(8)(A) & (g)(2)(B)(i). See Attachments A (April 23, 2010 Waiver Application) and B (June 9, 2010 Supplement to Waiver Application). Specifically, New York asserted that it could not transmit absentee ballots to UOCAVA voters by September 18, 2010, the 45th day before the November 2, 2010 federal general election.

10. Pursuant to Section 102(g)(1)(D) of UOCAVA, the State's hardship application included a comprehensive plan that outlined steps the State would take to ensure that UOCAVA voters had time to receive, mark, and submit their ballots in time to have the ballot counted. 42 U.S.C. §1973ff-1(g)(1)(D). See Attachment A at 6-8. New York's comprehensive plan included two key provisions that created a 45-day period for UOCAVA voters to receive, mark, and submit their ballots: (1) transmission of absentee ballots to UOCAVA voters on October 1, 2010, 32 days before the November 2, 2010 Federal general election and (2) extension of the deadline for receipt of ballots from UOCAVA voters postmarked by November 1, 2010, to November 15, 2010, 13 days after the November 2, 2010 Federal general election. See id. at 6.

11. On August 27, 2010, pursuant to its statutory authority, and based on the comprehensive plan set forth in New York's waiver application, the Department of Defense granted the State's request for a hardship exemption. See Attachment C (August 27, 2010 Waiver Grant). In reaching this determination, the Department of Defense noted the waiver was based "on an understanding that the

3

State of New York will transmit absentee ballots for the November 2, 2010 Federal general election to

UOCAVA voters no later than October 1, 2010." See Attachment C at 1.

12. Under New York law, absentee ballots from UOCAVA voters must be postmarked by November

1, 2010, the day before the November 2, 2010 general election, and received within 13 days after

election day to be counted. N.Y. ELEC. LAW §§ 10-114(1) and 11-212.

13. Despite the October 1, 2010 deadline outlined in the comprehensive plan set forth in New

York's waiver application, election officials in New York State nonetheless failed to transmit absentee

ballots for the Federal general election to UOCAVA voters by that date in at least nine New York

counties. Election officials in those counties exceeded the October 1, 2010 deadline in the State's

waiver application for transmitting UOCAVA ballots by periods ranging from five days to nine days.

14. On information and belief, in Kings County, transmission of absentee ballots to UOCAVA

voters was not completed until on or around October 10, nine days after the October 1, 2010

transmission deadline in the State's waiver application, 22 days before the State's postmarking

deadline, 23 days before the Federal general election, and 36 days before the State's extended deadline

for receipt of UOCAVA ballots.

15. On information and belief, in New York and Queens Counties, election officials did not

complete transmission of absentee ballots for UOCAVA voters until on or around October 9, eight days

after the October 1, 2010 transmission deadline in the State's waiver application, 25 days before the

State postmarking deadline, 26 days before the Federal general election, and 39 days before the

extended deadline for receipt of UOCAVA ballots.

16. On information and belief, in Erie and Bronx Counties, election officials did not complete

transmission of absentee ballots for UOCAVA voters until on or around October 8, one week after the

October 1, 2010 transmission deadline in the State's waiver application, 24 days before the State

4

postmarking deadline, 25 days before the Federal general election, and 38 days before the State's extended deadline for receipt of UOCAVA ballots.

17. On information and belief, in Richmond County, election officials did not complete transmission of absentee ballots for UOCAVA voters until on or around October 7, six days after the October 1, 2010 transmission deadline in the State's waiver application, 25 days before the State's postmarking deadline, 26 days before the Federal general election, and 39 days before the State's extended deadline for receipt of UOCAVA ballots.

18. On information and belief, in Niagara, Putnam, and Westchester Counties, absentee ballots for UOCAVA voters were transmitted on or around October 6, five days after the October 1, 2010 transmission deadline in the State's waiver application, 26 days before the State postmarking deadline, 27 days before the Federal general election, and 40 days before the extended deadline for receipt of UOCAVA ballots.

19. State election officials have received timely requests for absentee ballots for the November 2, 2010 Federal general election from voters who are entitled to vote by absentee ballot pursuant to the provisions of UOCAVA in Niagara, Putnam, Westchester, Erie, Richmond, Bronx, New York, Kings, and Queens Counties.

20. Defendants' failure to ensure that election officials in Niagara, Putnam, Westchester, Erie, Richmond, Bronx, New York, Kings, and Queens Counties transmitted absentee ballots by October 1, 2010, as provided by the comprehensive plan in New York's waiver application, violates Section 102(a)(8)(A) of UOCAVA. 42 U.S.C. § 1973ff-1(a)(8)(A).

21. An order of this Court is necessary requiring Defendants to take corrective action to protect rights granted by UOCAVA and to ensure that the State's affected UOCAVA voters have sufficient time to receive, mark, and submit their ballots in time to have them counted for the November 2, 2010 general election for Federal office.

5

WHEREFORE, Plaintiff asks this Court to hear this action pursuant to 42 U.S.C. §1973ff-4 and 28 U.S.C. § 1345, and:

(1)     Issue a declaratory judgment under 28 U.S.C. § 2201 that the Defendants violated Section 102(a)(8)(A) of UOCAVA by failing to ensure that election officials in Niagara, Putnam, Westchester, Erie, Richmond, Bronx, New York, Kings, and Queens Counties transmitted absentee ballots by October 1, 2010, as provided by the comprehensive plan in New York's waiver application; and

(2)     Issue injunctive relief ordering the Defendants, their agents and successors in office, and all persons acting in concert with them:

        (a)     To take such steps as are necessary to assure that UOCAVA voters shall have sufficient time to receive, mark, and submit their ballots in time to have them counted in the November 2, 2010 general election for Federal office;

        (b)     To take such steps as are necessary to afford affected UOCAVA voters who are eligible to participate in the State's November 2, 2010 general election for Federal office a reasonable opportunity to learn of this Court's order;

        (c)     To take such steps as are necessary to assure that the certification schedule for the November 2, 2010 general election for Federal office be adjusted as necessary to permit affected UOCAVA voters sufficient time to receive, mark, and submit their ballots in time to have them counted;

        (d)     To report to the United States concerning the dates ballots were transmitted and the number of UOCAVA ballots, by county, sent, received, and counted for the November 2, 2010 general election for Federal office pursuant to this Court's order within 45 days after the election; and

     (e)     To take such other steps as are necessary to assure that the State conducts all of

its future Federal elections in full compliance with UOCAVA.

The United States further asks this Court to order such other relief as the interests of justice may

require, together with the costs and disbursements of this action.

Date:  October 12, 2010


                                  ERIC H. HOLDER, JR.
                                  Attorney General

RICHARD S. HARTUNIAN            THOMAS E. PEREZ
United States Attorney                Assistant Attorney General
                                  Civil Rights Division

    /s/ Barbara Cottrell
BARBARA COTTRELL- 101411       T. CHRISTIAN HERREN JR.
Assistant United States Attorney       REBECCA WERTZ
Northern District of New York         RICHARD DELLHEIM - 512893
445 Broadway, Room 218               ERNEST McFARLAND
Albany, NY 12207-2924                AMANDA GREGORY
Telephone:     (518) 431-0247        RISA BERKOWER
Facsimile:      (518) 431-0249         Attorneys, Voting Section
                                  Civil Rights Division
                                  U.S. Department of Justice
                                  950 Pennsylvania Avenue, N.W.
                                  Washington, D.C. 20530
                                  Telephone:    (202) 305-1734
                                  Facsimile:     (202) 307-3961

# ATTACHMENT A



James A. Walsh
Co-Chair

Gregory P. Peterson
Commissioner

Todd D. Valentine
Co-Executive Director

**40 STEUBEN STREET**
**ALBANY, N.Y. 12207-2108**
**Phone: 518/474-8100**
**www.elections.state.ny.us**

Douglas A. Kellner
Co-Chair

Evelyn J. Aquila
Commissioner

Robert A. Brehm
Co-Executive Director

April 23, 2010

Mr. Robert Carey
Director, Federal Voting Assistance Program
Department of Defense
1155 Defense Pentagon
Washington, DC 20301-1155
Fax: 703-636-1352
E-mail: Robert.Carey@fvap.ncr.gov

RE:   New York State MOVE Act Waiver Request

Dear Mr. Carey:

President Barack Obama signed into law the National Defense Authorization Act for FY 2010 on October 28, 2009. Subtitle H of that law (Military and Overseas Voter Empowerment (MOVE) Act) amended various parts of the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) (42 USC §§ 1973ff et seq.). Among these amendments is a provision requiring states to transmit absentee ballots to uniformed and overseas voters no later than 45 days prior to an election for Federal office (42 USC § 1973ff-1(a)(8)(a)). This provision takes effect on November 1, 2010. Under appropriate circumstances, the law provides the ability to seek waiver from this requirement.

Therefore, pursuant to 42 USC § 1973ff-1(g) New York State hereby submits its application for a waiver for the 2010 General Election from the 45 day pre-election requirement under subsection (a)(8)(A) . This waiver application pertains only to the upcoming election and is not intended to be a request for a waiver for elections later than 2010.

It is my hope that New York State will receive a response prior to the statutory deadline of 65 days prior to the General Election, within which the law requires you to resolve all applications (42 USC § 1973ff-1(g)(3)(A)). The logistics surrounding the implementation of the above provisions are significant and time is clearly of the essence. If there are elements of this waiver provision that you believe might be improved, we look forward to discussing those elements at your earliest possible convenience with FVAP and the U.S. Department of Justice (DOJ).

**Necessity for waiver request:** New York State is unable to meet the 45-day pre-election requirement in 2010, attributable to an undue hardship.

New York recognizes the purpose of the 'time to vote' provision in the MOVE Act. The 'time to vote' provision is a laudable goal to ensure sufficient time for roundtrip ballot transmission for military and special federal voters and to allow the ballot to be received by the election official in time to be counted. New York State is committed to that goal, and believes that it has anticipated ways to achieve that goal through state law and the procedures explained in this waiver application.

However the statutory scheduling of the primary election (September 14, 2010), prohibits the sending of ballots 45 days before the November 2 General Election (September 18). For the following reasons, rescheduling the Primary Election would cause undue hardship on New York State, compromising our ability to safely and accurately conduct elections in 2010.

The administration of an election in New York is a challenge in any year. There are over 6,000 polling sites in the state and more than 100,000 election workers are hired to serve as inspectors, coordinators, trainers and voting machine technicians on election day. These 6,000 polling sites are reserved more than a year in advance of the primary election in order to ensure site availability, especially since many of the sites utilized frequently serve other community and/or governmental functions. Arrangements have also already been made for the election workers based on their availability for the September Primary Election. Rescheduling the Primary Election would require significant time and resources to confirm the availability of more than 100,000 trained election workers to serve on Election Day. Also, if the Primary Election were rescheduled, it is anticipated that a significant number of new workers will need to be recruited and trained, causing further undue hardship on New York State's resources, and compromising our ability to safely and accurately conduct elections in 2010.

In addition to the regular and routine challenges surrounding the administration of an election in New York State, 2010 poses additional unique challenges. The most significant issue is New York State's expected transition to full compliance with the Help America Vote Act (HAVA) of 2002 (Public Law 107-252) in 2010. New York State is fully committed to compliance with all aspects of HAVA, including the replacement of thousands of voting machines with ones that are HAVA compliant. The State and the State Board of Elections (State Board) have been subject to a federal court order since 2006 which requires that on or before the September 2010 primary election, the State and State Board fully comply with HAVA by meeting specific compliance milestones pursuant to a strict timetable which is monitored by the U.S. Department of Justice. This transition has been and remains a complicated and arduous one but we are on track to meet that deadline. Irrespective of the initial HAVA deadlines, the strict timelines in the court order place additional demands on election procurement and technical staff on the state and county level.

With an ever-increasing national focus on the election process, particularly in the areas noted above, the State Board is working increasingly closer with County Boards of Elections, and Federal, State and local agencies. We are developing pre-election and post-election requirements and procedures which address the new and changing needs of

the electorate and the overall election process, and are creating corresponding methods of responsible and consistent implementation. The scope of this agenda is tremendous, and includes the certification, acquisition, acceptance testing, deployment, and use of poll site optical scan voting systems throughout New York to replace mechanical lever voting machines, in addition to the support and monitoring of over 30,000 pieces of new voting equipment.

If New York were required to move the date of the September 14, 2010 Primary Election to an earlier date, such action would negatively impact the State's overall, multi-level 2010 compliance and technology transition efforts, causing significant voter confusion, and the failure to comply with our existing federal court order. New York can ill-afford the ramifications of the public's loss of confidence in its elections, nor can it sustain the penalties which could be levied by the federal court for its failure to meet already established milestones and deadlines.

Moreover, three voting jurisdictions within New York State, Bronx County, Kings (Brooklyn) County, and New York (Manhattan) County, are subject to the preclearance requirement of Section 5 of the Voting Rights Act whenever there is a change to voting processes. This requirement demands additional logistical coordination with the Department of Justice with respect to the introduction of new voting systems and policies and procedures utilized to conduct elections in New York State.

Finally, in 2010, New York State will experience a very busy election cycle with contests for every statewide office including Governor, Lieutenant Governor, Attorney General, Comptroller, all of the members of both houses of the State Legislature, State Supreme Court Justices in thirteen judicial districts, all Representatives in Congress, and both US Senate positions (for the first time since 1938), as well as numerous county-level and local jurisdiction elections.

Rescheduling the Primary Election would also cause undue hardship on New York State because a significant number of the dates throughout the entire political calendar are tied to the date of the Primary Election, including:

- filing of party calls (NYS Election Law §2-120);
- filing designating petitions (NYS Election Law §§6-134, 6-158, 6-120 and 6-164) and ballot access issues related to acceptance, authorization and administrative and judicial review of any objections;
- dates for holding state committee meetings to nominate candidates for statewide offices (NYS Election Law §§6-104, 6-108, 6-158, and 6-116);
- dates for holding judicial district conventions (NYS Election Law §6-158);
- dates to register to vote and still be eligible for the Primary Election (NYS Election Law §§5-210 and 5-208);
- requests for absentee ballots (NYS Election Law §§8-400, 8-412, 10-106, and Article 11, Title II); and
- campaign finance issues related to:
  - contribution limits within an election cycle;
  - dates for filing periodic and pre-primary election and post-primary election statements of campaign finance activity;

As a result, any change in the Primary Election date during an election year impacts the administration of elections in a number of different ways. And significantly, any proposed change to the election calendar during an election year would most certainly impact deadlines that have already passed, raising issues as to how to treat the due process rights of those candidates, political parties and voters who would be impacted by those deadlines. Provided herein are just a few examples of the impact that would occur if the date of the Primary Election needed to be changed, without providing adequate consideration, planning and public notice.

New York has been and remains committed to ensuring that military and special federal voters can cast an absentee ballot that will arrive timely and be counted. For several years, New York extended the effective date of a law that sought to address this issue. In 2008, anticipating this very issue, New York Election Law was amended to allow, for the first time, military and special federal voters to request a ballot by facsimile or email. It also permanently expanded the deadline for receipt of such ballots to 13 days after a general or special election. Finally, it made permanent the provision that allows a military voter to have a witness sign and date his or her ballot transmittal envelope instead of obtaining a postmark (Chapter 165 of the Laws of 2009; New York State Election Law § 9-209[1] [a], see Attachment A). As a result, under current New York law, military and special federal ballots would have 45 days to make the "round-trip" from the board of elections to the voter and back to the board of elections because boards of elections are required to send out military and special federal ballots 32 days before the General Election. New York's plan, as described below, builds on the changes that were made in the Election Law last year.

**Specific State Plan:** New York State is fully committed to increasing the enfranchisement of military voters and special federal voters as required by the MOVE Act and is working to ensure that adequate time is provided for military voters and special federal voters to cast their ballots and have them counted. The State Board supported the statutory changes made by the NYS Legislature in 2009 (Chapter 165 of the Laws of 2009 referenced above). Such efforts to expand the round-trip time period have been supported by FVAP Director Bob Carey during congressional testimony on this important issue.

This year, knowing that a waiver would be necessary fo the 2010 general election, the State Board of Elections has aggressively pursued or is pursuing the following steps toward achieving full implementation of the MOVE Act in New York:

- Consultation with FVAP liaisons, for guidance and advice.
  - November 2009, participated in conference call with FVAP liaisons to learn of proposed implementation RFQ.
  - December 2009, received further information from FVAP liaison on pending RFQ, efforts by FVAP and DOJ to develop State waiver instructions, and received copy of December 15th press release indicating FVAP Director Bob Carey's intent to submit an RFQ on how vendors could develop two key products: a tool to guide the voter through the UOCAVA registration and absentee ballot request process; and another tool to guide them through receiving, marking, printing and sending an absentee ballot.

- Participation during January 2010 in NASS, NASED and the New York State Election Commissioners' Association Conferences, to learn from and share with colleagues.
  - o Participation in NASED and NASS conference sessions related to MOVE Act implementation, in which FVAP Director Bob Carey reported on the status of the proposed FVAP coordinated effort.
- Informally reviewed vendor-proposed MOVE Act solutions in anticipation of the FVAP's RFQ coordinated program.
- Drafting New York's implementing legislation, aimed at ensuring compliance with other mandatory provisions of the MOVE Act in 2010 (A10681 Silver / S7466 Sampson, see Attachment B).
- Consultation with New York's Office of General Services, in preparation to proceed with any procurement necessary for New York to comply with MOVE, even if the FVAP is not prepared to do so at this time.
  - o The State Board has expressed to FVAP an intent to participate in its proposed nationally coordinated MOVE Act solution. This preliminary review is based on the limited information provided by FVAP and a complete review and response is anticipated subsequent to receiving from FVAP additional program details.
  - o In the event the FVAP coordinated solution is unable to meet the 2010 deadline or is not ready for a timely implementation, the State Board is proceeding with a NYS procurement to comply with MOVE with an interim implementation effort. We anticipate that the vendor selected by NYS will also participate in the coordinated FVAP program. As such, we anticipate that FVAP will credit or reimburse NYS for its initial MOVE compliance expenditure.
- March 16, 2010 FVAP's RFQ released – vendor response due date March 31.
- March 30, 2010, State Board staff participated in conference call with FVAP Director Bob Cary to receive update on RFQ and to reconfirm that New York was still waiting for the FVAP to complete its consultation with the U.S. Attorney General to develop guidelines for use in submitting a waiver request,. In this phone conference, we also became aware of the following information :
  - o The FVAP significantly changed the proposed project scope, eliminating the plan to develop and provide a tool to guide voters through the UOCAVA registration and absentee ballot request process. FVAP will only select vendors to develop a tool to guide UOCAVA voters through receiving, marking, printing and sending an absentee ballot.
    - FVAP's determination to down-scope the project will require New York State to develop and implement a tool to guide voters through the UOCAVA registration and absentee ballot request process, in accordance with the federal MOVE Act mandate. New York State desires to implement a seamless link between the initial UOCAVA voter registration and absentee voter application process with the ballot delivery and tracking effort.
    - The removal of the original tool from the FVAP plan, which is necessary for MOVE Act compliance, while mandating in the RFQ a component to assist voters in marking a ballot, which is not a MOVE Act requirement, raises additional issues pertaining to cost, additional time to integrate multiple solutions into a seamless

effort that is not confusing to the voter or election administrators, as well as the additional planning, development and implementation time period needed for compliance in 2010 and creates delays in New York's implementation.

o   Mr. Carey further clarified that the FVAP coordinated MOVE Act solution would be available ONLY through January 2011. As a result, New York State is initially planning to craft its own effort for MOVE Act compliance for elections for Federal office occurring after January 2011, should FVAP not receive necessary authorization or funding to extend the proposed interim Electronic Voting Support Wizard (EVSW) pilot program beyond that time period.

**Specific steps the State will take to provide sufficient time for UOCAVA voters to vote for the upcoming election:**

- The number of military and overseas citizen voters affected: a calculation of UOCAVA voters supplied by FVAP earlier this year indicates that there are 60,076 Uniformed Service members, 22,459 family members of voting age, and approximately 238,200 overseas citizens who claim New York as their voting residence. From our 2008 report to the EAC, 83,422 UOCAVA ballots were sent out, of which 27.5% were military ballots and 72.5% were civilian. Of that number, 54,220 were returned (65%) for counting, of which 50,065 were actually counted (92.3%). New York State will use the elements detailed herein to work to ensure improved return-rate statistics for both military and special federal voters.
- Military and Special Federal ballots are projected to be available for transmission to qualified voters who have an approved application on file with their county board of elections not later than October 1.
- Due to recent state law changes anticipating the UOCAVA voter transmission issue, New York State provides a full 45 days between the date general election absentee ballots will be sent to UOCAVA voters and the date absentee ballots must be returned to be counted: 32-day pre-election delivery of ballots to military and special federal voters through receipt of voted ballots at local boards of elections by 13 days post-election.
- Given that some UOCAVA voters may not know that their ballots are accepted after Election Day, the State Board will be providing guidance to all county election officials and voters. That guidance will focus on clearly informing the UOCAVA voters of their new rights under New York and federal law and that their vote will count when a voted ballot is received up to 13 days post-general election. This will encourage the voters to submit their ballots – even close to Election Day.

  o   Clarify information which must be contained on the outer envelope addressed to the board of elections and instructions for returning the sealed ballot envelope containing the marked ballot to the appropriate board within the timeframe for receipt of the ballot in order to be counted;

- Late counting is permitted and authorized pursuant to statute (Chapter 165 of the Laws of 2009, see New York State Election Law 9-209(1) (a)) increasing to 14 days after a general election or special election the time period to for county boards of elections to canvass such military and special federal ballots.

- New York State anticipates compliance with the MOVE Act requirements and to provide electronic transmission of blank ballots to UOCAVA voters by participating in the FVAP coordinated MOVE Act implementation solution. In the event the FVAP coordinated solution is unable to meet the 2010 deadline or is not ready for timely implementation, the State Board is proceeding with a NYS procurement to comply with MOVE. We anticipate that the vendor selected by NYS will also participate in the coordinated FVAP program. As such, we anticipate that FVAP will credit or reimburse NYS for its initial MOVE compliance expenditure and take over responsibility for future payment. The proposed/draft implementing plan provides for the electronic transmission of ballot applications, ballots, ballot envelope templates and related instructions.
- The proposed New York State legislation (A10681/S7466) expands the use of FWAB to provide:
  - o   For the board of elections to cast and canvass any federal write-in absentee ballots validly cast by a military voter for all proposals, public offices and party positions for which such voter is entitled to vote if the voter had received a certified ballot, and which would now include state and local contests.
  - o   That within 3 days of the scheduling of a special election or upon a court restraining the issuance of ballots, all military voters and special federal voters will be sent a federal write-in absentee ballot. Upon the certification of the ballot, all special federal voters will be sent such certified ballot via the preferred method of transmission, notwithstanding the prior transmission of the federal write-in absentee ballot.
    - o   Expedited mail transmission if the military voter has not expressed a preference to receive same by facsimile transmission or electronic mail, and his or her request for a military ballot was made at least thirty-two days before the election, and the certified ballot is transmitted after a FWAB has been issued.
  - o   That a FWAB may be returned 13 days after a general or special election.

- Provides cost-free expedited method for UOCAVA citizens to return voted ballot? YES, the FVAP coordinated MOVE Act implementation is expected to coordinate expedited return mail services for military voters. Further, several proposed vendor solutions provide links to overseas expedited mail delivery services which provide reduced-cost postage solutions.
- Provides central collection point within State for returned ballots? NO. However, the proposed coordinated MOVE Act solution for NYS would include mailing instructions with a sample outside return envelope containing the voter-specific county board of elections return mailing address.
- New York State will also designate State Board staff members to serve as liaison with FVAP to facilitate issue resolution and to provide FVAP with requested updates of activity and progress related to MOVE implementation. The State Board will provide outreach and assistance to county boards of elections on UOCAVA voting matters to help them comply with federal and state MOVE Act requirements. The State Board will also provide outreach to New York military bases and special federal citizen associations.
- In addition to its liaison work, the State Board will aggressively promote public information campaigns through traditional and new media to reach out to New

York military and special federal voters to ensure they have the information needed to get their ballots as early as possible and return them as early as possible. Further, the State Board will work with the Department of Defense to help New York military and special federal voters to give them accurate and timely information about the election and the races for which they are eligible to vote. The earlier the voter returns the ballot, the more likely it will be received in time to be counted.

**Sufficient time for UOCAVA voters to receive the absentee ballot and return the ballot in time for counting and how the plan provides a substitute for the 45 day ballot transmission requirement for the upcoming election.**

New York State anticipates compliance with the MOVE Act requirements and to provide electronic transmission of blank ballots to UOCAVA voters by participating in the FVAP coordinated MOVE Act implementation solution. In the event the FVAP coordinated solution is unable to meet the 2010 deadline or is not timely ready for implementation, the State Board is proceeding with a NYS procurement to comply with MOVE. We anticipate that the vendor selected by NYS will also participate in the coordinated FVAP program. As such, we anticipate that FVAP will credit or reimburse NYS for its initial MOVE compliance expenditure and take over responsibility for future payment. The proposed/draft implementation plan provides for the electronic transmission of ballot applications, ballots, ballot envelope templates and related instructions.

Military ballots and special federal ballots are required to be transmitted not later than 32 days (October 1) before the date of the November 2, 2010 General Election and may be returned in person to the county board of elections prior to the close of polls on election day or, if postmarked before election day – received not later than thirteen days after the election (November 15, 2010), thus providing a 45-day period to receive, vote and return a completed ballot to be counted. Testimony at the May 13, 2009 Senate Rules Committee hearing on the topic of military voting clearly reflected that if other precautions are taken, an appropriate 'window' of post-election acceptance of UOCAVA ballots should be an acceptable way to ensure such voters have enough 'time to vote'. As referenced in that hearing, post-election acceptance of UOCAVA ballots is considered by many to be an appropriate 'safety valve' to provide time to have those ballots counted. The Congressional Research Service indicated that 63% of election officials contacted in their survey indicated that UOCAVA ballots were not counted because they were received too late[1]. We believe the efforts described above as well as the 45 day roundtrip provisions will provide strong protections for military and special federal voters.

The 45-day period discussed above is consistent with the March 26, 2009 consent decree entered into by the State of New York and the U.S. Department of Justice which stated "providing a minimum of 30 days for the round-trip transit of absentee ballots to and from UOCAVA voters will ensure that overseas voters...have a reasonable opportunity to vote." United States of America v State of New York, et al.; Civ. No. 1:09-cv-335GLS-RFT (USDC N. District of New York) (Consent Decree) (March 26,

---

[1] http://rules.senate.gov/public/?a=Files.Serve&File_id=fcb96f23-960d-4e3a-bcd4-84afe4e3b3f5 Page 2, line 62.

2009). Due to the other requirements in our comprehensive waiver submission, we believe we are providing additional benefits to our UOCAVA voters – beyond the minimum requirements of MOVE. We believe that on balance, New York will be more active in supporting UOCAVA voters than other states, through our waiver plan.

Thank you for your kind consideration of this request. Please contact me with any questions or if you require additional information.

Sincerely,

Robert A. Brehm
Co-Executive Director
Chief Election Official

RAB/dsm

cc:  Hon. David A. Paterson, Governor
     Hon. Thomas P. DiNapoli, Comptroller
     Hon. Andrew M. Cuomo, Attorney General
     Hon. Sheldon Silver, Speaker
     Hon. John L. Sampson, Conference Leader
     Hon. Dean G. Skelos, Senate Minority Leader
     Hon. Brian Kolb, Assembly Minority Leader
     Hon. Joan L. Millman, Chair, Assembly Election Law Committee
     Hon. Joseph P. Addabbo, Jr., Chair, Senate Election Law Committee
     Hon. Thomas W. Libous, Senate Election Law Committee
     Hon. Marcus Molinaro, Assembly Election Law Committee
     Hon. Thomas R. Wilkey, Executive Director, Election Assistance Commission
     Hon. Douglas A. Kellner, Co-Chair, New York State Board of Elections
     Hon. James A. Walsh, Co-Chair, New York State Board of Elections
     Hon. Evelyn J. Aquila, Commissioner, New York State Board of Elections
     Hon. Gregory P. Peterson, Commissioner, New York State Board of Elections
     Todd D. Valentine, Co-Executive Director, New York State Board of Elections

# ATTACHMENT B



James A. Walsh
Co-Chair

Gregory P. Peterson
Commissioner

Todd D. Valentine
Co-Executive Director

**40 STEUBEN STREET**
**ALBANY, N.Y. 12207-2108**
**Phone: 518/474-8100**
**www.elections.state.ny.us**

Douglas A. Kellner
Co-Chair

Evelyn J. Aquila
Commissioner

Robert A. Brehm
Co-Executive Director

June 9, 2010

Mr. Robert Carey, Director
Federal Voting Assistance Program
DOD – Rosslyn Plaza North
1777 North Kent Street
14th Floor, Suite 14003
Arlington, VA 22209-2162

RE: NYS MOVE Act Waiver Application

Dear Mr. Carey:

The State Board is in receipt of your letter of May 20th in which FVAP requested further clarification of certain components of the MOVE Act waiver application previously submitted on behalf of New York State. Please consider the following information:

1.(a)   Contingency plans the State has if ballots are not mailed by local election boards by October 1, 2010.

The New York State Election Law requires the State Board of Elections to certify the state-level offices and candidates to appear on the general election ballot not later than thirty six days prior to the date of the election (NYS Election Law §4-112(1). The appropriate county boards of elections are required to determine the candidates and offices to appear on the general election ballot not later than the day after the State Board issues its certification of those candidates (NYS Election Law §§4-114 and 7-122(4)).

The NYS Election Law was amended this year (Chapter 104 of the Laws of 2010) to provide a contingency for the transmission of Military Ballots (NYS Election Law §10-108(1)(c) and §10-108-(1)(d)) and for the transmission of Special Federal Ballots (NYS Election Law §11-216(3)(b) and §11-216(3)(c)) to address circumstances arising from a court restraining the issuance of military ballots or special federal ballots. The new provision mandates that all military voters and all special federal voters will be sent a federal write-in absentee ballot. Upon the certification of the ballot, all military voters and all special federal voters will be sent such certified ballot via the preferred method of transmission, notwithstanding the prior transmission of the federal write-in absentee ballot.

1.(b)   Details on NYS Ballot Printing Process.

County boards of elections either contract with professional printing firms which have proven to the satisfaction of the board, their ability to produce in a timely way, ballots which can be read accurately by that county's selected voting system, or the board may arrange to print those same ballots, in-house. County boards of elections will utilize the voting system's election management system to build and produce PDF versions of each required ballot style. The county boards of election will then cause the ballots to be printed in-house or deliver same to their printer. (This PDF methodology enables boards to make ballots available for delivery to military and federal voters as soon as possible, to ensure not only prompt delivery but adequate turn-around time.)

2.      Anticipated Timeline for finalizing the content for electronically-transmitted ballots and making that content available to FVAP or alternatively, the State's vendor.

Each year's ballot creation tasks begin with the execution of files and templates corresponding to the various municipal/jurisdictional building blocks for each ballot style. Information is provided by county, city, town and village clerks in January of each year, identifying local offices which are to be filled at an election.

Preliminary ballot creation tasks ensue, with the knowledge that last minute vacancies can be declared (deaths, retirements, and resignations) at any time, requiring modifications to files and templates.

The State Board of Elections certifies to each local board, the vacancies in state and federal offices which must appear on the ballot, in March of each year, which further enables county boards to continue to ready files and templates for the inclusion of specific candidate information. The deadline for municipal clerks to certify to the county boards of elections a local proposition is 36 days prior to the general election.

Once ballot access processes begin, specific candidate information as generated at the local level and as certified to county boards by the State Board can be added to files and templates. The names of candidates from the Primary Election Certification whose designations are uncontested can be added to general election files and templates, with the primary election winners being included when the General Election ballot is certified, which occurs no later than thirty-five days before the General Election. County boards of elections will produce PDF versions of each ballot style and will sign-off on each, and make such files available for transmission by October 1st to military voters and special federal voters, using the form of transmission selected by such voters.

Thank you for your kind consideration of this request. Please contact me with any questions or if you require additional information.

Sincerely,

Robert A. Brehm
Co-Executive Director
Chief Election Official

RAB/dsm

cc:    Hon. David A. Paterson, Governor
       Hon. Thomas P. DiNapoli, Comptroller
       Hon. Andrew M. Cuomo, Attorney General
       Hon. Sheldon Silver, Speaker
       Hon. John L. Sampson, Conference Leader
       Hon. Dean G. Skelos, Senate Minority Leader
       Hon. Brian Kolb, Assembly Minority Leader
       Hon. Joan L. Millman, Chair, Assembly Election Law Committee
       Hon. Joseph P. Addabbo, Jr., Chair, Senate Election Law Committee
       Hon. Thomas W. Libous, Senate Election Law Committee
       Hon. Marcus Molinaro, Assembly Election Law Committee
       Hon. Thomas R. Wilkey, Executive Director, Election Assistance Commission
       Hon. Douglas A. Kellner, Co-Chair, New York State Board of Elections
       Hon. James A. Walsh, Co-Chair, New York State Board of Elections
       Hon. Evelyn J. Aquila, Commissioner, New York State Board of Elections
       Hon. Gregory P. Peterson, Commissioner, New York State Board of Elections
       Todd D. Valentine, Co-Executive Director, New York State Board of Elections

# ATTACHMENT C



**OFFICE OF THE UNDER SECRETARY OF DEFENSE**
4000 DEFENSE PENTAGON
WASHINGTON, DC 20301-4000

AUG 27 2010

PERSONNEL AND
READINESS

Mr. Robert H. Brehm
Mr. Todd D. Valentine
Co-Executive Directors, State Board of Elections
40 Steuben Street
Albany, NY 12207-2108

Dear Mr. Brehm & Mr. Valentine:

The Department of Defense received from the State of New York a timely application dated April 23, 2010, copy attached, for an undue hardship waiver under Section 102(g) of the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), as amended by the Military and Overseas Voter Empowerment Act (MOVE Act) for the November 2, 2010 Federal general election.

Under delegated authority from the Secretary of Defense as the Presidential Designee for UOCAVA, I have reviewed the State's application, consulted with the representative of the Attorney General of the United States, and find it meets the requirements for a one time undue hardship waiver under Section 102(g)(2) of UOCAVA. Accordingly, I approve the State of New York's request to waive the application of Section 102(a)(8)(A) of UOCAVA for the November 2, 2010 Federal general election.

In rendering this decision, I carefully considered the assertions made by the State in support of its waiver request, which are addressed in detail in the Memorandum attached to this letter. Based on those assertions and the attached rationale, I have determined the following: 1) the October 28, 2009 passage of the MOVE Act and New York's primary election scheduled for September 14, 2010 created an undue hardship that prohibits the State from complying with Section 102(a)(8)(A) of UOCAVA; and 2) the State's proposed comprehensive plan for this election provides sufficient time for UOCAVA voters to vote and have their ballots counted. As explained in the attached rationale, this waiver is based on the understanding that the State of New York will transmit absentee ballots for the November 2, 2010 Federal general election to UOCAVA voters no later than October 1, 2010, and that absentee ballots will be accepted up to November 15, 2010 and counted.

Sincerely,

*Lynn C. Simpson*

Lynn C. Simpson
Director, Human Capital and Resource
  Management
Performing the Duties of the Principal
  Deputy Under Secretary of Defense
  (Personnel and Readiness)

Enclosures:
As stated



## MEMORANDUM

### Approval of the State of New York's MOVE Act Waiver Request
### under Section 102(g)(2) of UOCAVA
### for the November 2, 2010 Federal General Election

The Federal Voting Assistance Program (FVAP) of the Department of Defense received the application of the State of New York (the State), dated April 23, 2010, for an undue hardship waiver for the November 2, 2010 Federal general election, as provided by the amendments to Section 102(g) of the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA),[1] enacted by the Military and Overseas Voter Empowerment Act (MOVE Act).[2]  Approval of the waiver request and this Memorandum are predicated on the assertions made by the State in support of its waiver request, including the official waiver request letter and subsequent supplementary information provided, and the explanation of its written request in the conference call on July 23, 2010 between Robert Brehm and Todd Valentine, Co-Executive Directors, New York State Board of Elections; and officials from FVAP and the United States Department of Justice's Voting Section (DOJ/Voting).

Under delegated authority from the Secretary of Defense as the Presidential Designee for UOCAVA,[3] the Under Secretary of Defense for Personnel and Readiness (USD(P&R)) has reviewed New York's application, consulted with the representative of the Attorney General of the United States, and finds the State's application meets the requirements for a one-time undue hardship waiver under Section 102(g)(2) of UOCAVA,[4] and approves New York's waiver request from the application of Section 102(a)(8)(A) of UOCAVA for the November 2, 2010 Federal general election.  For purposes of this Memorandum, the term "Presidential Designee" includes those officials exercising authority delegated by the Presidential Designee.

### I. Background and Initial Findings

UOCAVA authorizes the Presidential Designee to grant a waiver only to those States whose reason for a waiver corresponds with one of the following situations:

1. The State's primary election date prohibits the State from complying with Section 102(a)(8)(A);
2. The State has suffered a delay in generating ballots due to a legal contest; or
3. The State Constitution prohibits the State from complying with such Section.[5]

---

[1] 42 U.S.C. § 1973ff, *et seq.*

[2] Pub. L. No. 111-84, Subtitle H, §§ 575-589, 123 Stat. 2190, 2318-2335 (2009).

[3] The Secretary of Defense was designated the Presidential Designee by Executive Order 12642 (June 8, 1988), 53 CFR § 21975.  The Secretary of Defense has delegated this authority to the Under Secretary of Defense (Personnel & Readiness) through DOD Directive 1004.04.

[4] 42 U.S.C. § 1973ff-1(g)(2).

[5] 42 U.S.C. § 1973ff-1(g)(2)(B).

It is within the Presidential Designee's authority to consider New York's waiver application because New York states that its primary election scheduled for September 14, 2010 prohibits the State from complying with Section 102(a)(8)(A) of UOCAVA.[6]

Under UOCAVA, if a State determines that it is unable to comply with the requirement to transmit absentee ballots at least 45 days before a federal election (45 day prior requirement) due to one of the three situations referenced above resulting in an undue hardship, the Chief State Election Official shall request a waiver from the Presidential Designee pursuant to the Act.  The Presidential Designee shall approve such a request if the Presidential Designee determines that:

1. One or more of the three referenced situations creates an undue hardship for the State; and,
2. The State's comprehensive plan presented in support of its request provides absent uniformed services and overseas voters (UOCAVA voters) sufficient time to receive and submit absentee ballots they have requested in time to be counted in the election for Federal office.

The Presidential Designee's findings for each of these requirements are addressed separately below.

The comprehensive plan proposed by New York addressed the following requirements set forth in the MOVE Act:

> (i) the steps the State will undertake to ensure that UOCAVA voters have time to receive, mark, and submit their ballots in time to have those ballots counted in the election;
> (ii) why the plan provides UOCAVA voters sufficient time to vote as a substitute for the requirements of the MOVE Act; and
> (iii) the underlying factual information which explains how the plan provides such sufficient time to vote as a substitute for such requirements.[7]

Further, as required by UOCAVA,[8] New York's application includes recognition that the purpose of the Act's 45 day prior requirement is to allow UOCAVA voters enough time to vote and have their votes counted in an election for Federal office.

In determining whether the State's comprehensive plan provides sufficient time to vote as a substitute for the requirement to transmit ballots 45 days before the election, the Presidential Designee considered that the minimum absentee ballot requirements under the new law require ballots to be transmitted 45 days prior to Election Day, using the voter's choice of either postal mail or electronic transmission method.  Although facsimile transmission is compliant with the MOVE Act's electronic transmission requirements, it is the least desirable method of electronic

---

[6] *See* 42 U.S.C. § 1973ff-1(g)(2)(B)(i) and 42 U.S.C. § 1973ff-1(a)(8)(A).
[7] 42 U.S.C. § 1973ff-1(g)(1)(D).
[8] 42 U.S.C. § 1973ff-1(g)(1)(A).

transmission, given that it is the least available among overseas active duty military voters, Reserve component military voters, and overseas DOD civilian employees.[9]

Each State's comprehensive plan was evaluated against several criteria, and the analysis as to whether a State's comprehensive plan provides sufficient time was examined by considering the totality of circumstances presented in the plan. Among the issues considered was the total time a voter has to receive, mark and return the ballot and have it counted (including the number of days before and after Election Day). Also among the issues considered was the cumulative number and accessibility of alternative methods of ballot transmission, and, if applicable, ballot return, as additional alternative methods provide more UOCAVA voters with the likelihood they will have sufficient time to receive, vote, and return their ballot and have it counted. Finally, each State's comprehensive plan was reviewed for any additional efforts made by the State, whether put in place in advance of or subsequent to any changes in the law, that improved the likelihood a UOCAVA voter would be able to receive, vote and return the ballot and have it count.

## II.  The State Has Shown Undue Hardship

New York's application, as required by the statute, explained why its chief State election official determined that its primary election date and associated activities required to generate a general election ballot prohibit it from transmitting to UOCAVA voters an absentee ballot by the 45th day prior to the November 2, 2010 Federal general election, and how that created an undue hardship. Accordingly, the Presidential Designee finds that given the timing of the passage of the MOVE Act on October 28, 2009 and the issues and challenges cited by the State in its waiver application, New York's scheduled primary creates an undue hardship as contemplated by the MOVE Act.

## III.  The State's Comprehensive Plan Provides Sufficient Time for UOCAVA Voters To Vote and Have That Vote Counted

The Presidential Designee concludes that New York did establish that its proposed comprehensive plan provides UOCAVA voters "sufficient time to receive absentee ballots they have requested and submit marked absentee ballots to the appropriate State election official in time to have that ballot counted" in the November 2, 2010 Federal general election.[10] In reaching this determination, the Presidential Designee examined the totality of circumstances presented in the plan to determine whether it provided sufficient time to vote as a substitute for UOCAVA's requirement that ballots be transmitted at least 45 days prior to Election Day. Among the issues considered were the time voters have to receive, mark and return their ballots and have them counted (both before and after Election Day); the cumulative number of alternative methods of ballot transmission and return; and the accessibility of the alternative ballot transmission methods presented in the comprehensive plan.

---

[9] Defense Manpower Data Center, "2006 Survey Results on Voting Assistance Among Military Members and DoD Civilian Employees by Location, Age, and Paygrade," Survey Note No. 2007-011, at 3, July 9, 2007, at http://www.fvap.gov/resources/media/ivas06dod.pdf.
[10] 42 U.S.C. § 1973ff-1(g)(2)(A).

Under its submitted comprehensive plan, New York will transmit absentee ballots to UOCAVA voters by October 1, 2010, which is 32 days before the Federal general election. Absentee ballots must be received by local election jurisdictions by November 15, 2010, thirteen (13) days after Election Day, so long as the ballots have been voted no later than the day before Election Day. This gives UOCAVA voters a total of 45 days to receive, mark, and return their ballots.

The Presidential Designee considered the ballot transit time provided in conjunction with the additional methods other than postal mail available to New York's UOCAVA voters to receive and return their ballots. The comprehensive plan proposed by New York provides two alternative transmission methods for all UOCAVA voters and will make ballots available by either of the alternative methods, in addition to postal mail, that the voter requests: facsimile or e-mail delivery. Additionally, voters in New York may choose to use New York's FVAP-funded Electronic Voting Support Wizard, an online ballot delivery and ballot marking system. This is a significant technological advance in ballot availability, as it allows for online marking of the ballot in addition to online delivery, making an electronic ballot available to a UOCAVA voter the same day the official printed ballots would be placed in the mail. This also allows the voter to mark the ballot online, print the marked ballot and receive complete local instructions for returning the ballot that same day.

Therefore, given the totality of circumstances presented in the comprehensive plan and the other election administration rules already in place, the Presidential Designee finds New York's comprehensive plan provides UOCAVA voters with a sufficient time to receive, mark and return their ballot in time to be counted.

## IV. Conclusion and Final Requirements

Given the foregoing and considering the totality of the circumstances presented, the waiver request of the State of New York is granted. The Presidential Designee determines the State's primary election date prohibits the State from complying with Section 102(a)(8)(A) of UOCAVA. The Presidential Designee has further determined that the comprehensive plan presented by New York provides UOCAVA voters sufficient time to receive absentee ballots they have requested and to submit marked ballots to the appropriate election official in time to be counted in the November 2, 2010 Federal general election, is therefore a sufficient substitute for Section 102(a)(8)(A)'s requirement to transmit ballots 45 days in advance of Election Day, and thus the State's plan serves as a basis for granting a hardship waiver under Section 102(g)(2).

Consequently, as noted above, this waiver is based on the understanding that the State of New York will comply with all commitments described herein, including that they will transmit absentee ballots for the November 2, 2010 Federal general election to UOCAVA voters no later than October 1, 2010, and that absentee ballots will be accepted up to November 15, 2010 and counted.

### A. Post-Election Evaluation

Because a waiver plan must provide UOCAVA voters sufficient time to vote, an important component of the approved comprehensive plan is a post-election evaluation of the comprehensive plan, provided to FVAP, which must include the following:

- Written certification that ballots were transmitted to UOCAVA voters on the date and in the manner described in the waiver application;
- The numbers of ballots sent to absent uniformed services voters with APO and FPO addresses, the number of ballots sent to uniformed services voters at a street address within the United States and the number of ballots sent to overseas civilian voters;
- The number of ballots from each of these groups returned in time to be counted;
- The number of ballots from each of these groups returned too late to be counted;
- If possible, a breakdown of further details about each of the above categories between ballots faxed, emailed, downloaded from the online ballot delivery and ballot marking system, and sent by postal mail;
- Any feedback, whether positive or negative, received from voters about any elements of the State's comprehensive plan; and
- Any additional information relevant to the effectiveness of the comprehensive plan, including information showing quantitatively the results of the comprehensive plan, and how the plan provided UOCAVA voters sufficient opportunity to receive, vote, and return their ballots.

### B. Reporting

As part of its comprehensive plan, New York officials agreed to keep FVAP and DOJ/Voting apprised of any subsequent problems in implementing the comprehensive plan as proposed, including but not limited to any failures of local election officials to transmit absentee ballots in accordance with the timeframe specified by the State's comprehensive plan.

Any questions or concerns, please contact Paddy McGuire, FVAP Deputy Director for Election Official Assistance, at 703-588-1584, or Paddy.McGuire@fvap.gov.

**U.S. Department of Justice**

Civil Rights Division

*Voting Section - NWB*
*950 Pennsylvania Ave, NW*
*Washington, DC  20530*

June 29, 2011

The Honorable Gary L. Sharpe
United States District Court
 for the Northern District of New York
James T. Foley United States Courthouse
445 Broadway, Room 441
Albany, New York  12207

   Re: *United States v. State of New York, et al.*
    Civil Action No. 10-CV-1214 (GLS)

Dear Judge Sharpe:

  We write to address a matter of increasing urgency. On October 19, 2010, this Court entered a Consent Decree in the above-referenced case to ensure that New York's overseas and military voters had a reasonable opportunity to vote in the November, 2010 election, as required by the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 42 U.S.C. §§ 1973ff to 1973ff-7, as amended by the Military and Overseas Voter Empowerment Act ("MOVE Act"), Pub. L. No. 111-84, Subtitle H, §§ 579-589, 123 Stat. 2190, 2318-2335 (2009). The Decree committed New York State to amend state law and/or election procedures to ensure full MOVE Act compliance for the November, 2012 general election.

  The United States believes such compliance cannot be achieved absent a change in law to move the State's primary election date earlier in the election calendar. Unfortunately, the 2011 legislative session has now ended, and the State failed to pass legislation moving its primary election. This failure raises grave concerns. Accordingly, the United States respectfully requests a status conference to address these matters as soon as possible.[1]

Statutory Background

  UOCAVA guarantees active duty members of the uniformed services (and their spouses and dependents) and United States citizens residing overseas the right "to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. § 1973ff-1. To give these voters adequate time to receive, mark, and return absentee ballots, the MOVE Act amended UOCAVA to require that states transmit absentee ballots to UOCAVA voters at least 45 days in advance of an election for federal office. 42 U.S.C. § 1973ff-1(a)(8).

---

[1] The Court retained jurisdiction over this matter through December 31, 2012. Consent Decree, at 12, Oct. 19, 2010, ECF No. 9.

States may be exempted from the 45-day advance mailing requirement only if they apply for, and are granted, a hardship waiver from the United States Secretary of Defense. 42 U.S.C. § 1973ff-1(g). To obtain a waiver, a state must show an "undue hardship" due to, among other things, a primary election date that prevents complying with the 45-day advance mailing requirement. 42 U.S.C. § 1973ff-1(g)(2). States seeking a waiver must also establish "a comprehensive plan to ensure that absent uniformed services voters and overseas voters are able to receive absentee ballots which they have requested and submit marked absentee ballots . . . in time to have that ballot counted in the election." 42 U.S.C. § 1973ff-1(g)(1)(D). States must include "the underlying factual information which explains how the plan provides such sufficient time to vote as a substitute" for 45 days of round-trip transit time. 42 U.S.C. § 1973ff-1(g)(1)(D)(iii).

A waiver is only valid for the specific election for federal office for which a waiver is requested. 42 U.S.C. § 1973ff-1(g)(4). Moreover, if a state receives a hardship waiver, the state must transmit UOCAVA ballots in accord with the comprehensive plan upon which the waiver is based. 42 U.S.C. §§ 1973ff-1(a)(8)(A) & 1973ff-1(g).

<u>New York's 2010 MOVE Act Violation</u>

New York's late primary date makes it virtually impossible for the State to comply with the MOVE Act's 45-day advance mailing requirement.[2] Although New York attempted to overcome this problem by obtaining a MOVE Act hardship waiver from the Secretary of Defense and by instituting a remedial plan for UOCAVA ballot transmission, the State failed to abide by the terms of this plan. Instead, last-minute judicial intervention was required to protect New York's UOCAVA voters. The specifics are as follows:

On April 23, 2010, New York applied for a hardship waiver from the Secretary of Defense, acknowledging that its September 14 primary election date rendered compliance with the 45-day mailing requirement impossible. (The 45th day before the general election fell on September 18.)  Its waiver application noted that State law permitted a ballot receipt extension of 13 days for UOCAVA ballots, N.Y. Elec. Law § 9-209, and thus it promised that all UOCAVA ballots would be mailed by October 1, 2010. *See* Letter from Robert A. Brehm, Co-Executive Director of the New York State Board of Elections to Robert Carey, Federal Voting Assistance Program Director, at 6-8 (Apr. 23, 2010) [hereinafter "NY Waiver Application"], attached as Exhibit A.

Based on these modified transmittal and ballot receipt dates, UOCAVA voters would have 45 days of round-trip transit time for their ballots. On August 27, 2010, the Secretary of Defense granted New York a hardship waiver. Letter from Lynn C. Simpson, United States Office of the Undersecretary of Defense, to Robert H. Brehm & Todd D. Valentine, Co-Executive Directors of the New York State Board of Elections (Aug. 27, 2010) ("this waiver is based on the understanding that the State of New York will transmit absentee ballots . . . no later than October 1, 2010, and that absentee ballots will be accepted up to November 14, 2010 and counted"), attached as Exhibit B.

---

[2] New York's primary election date is the "first Tuesday after the second Monday in September before every general election." N.Y. Elec. Law § 8-100. Although this date will always fall more than 45 days prior to general Federal elections, it provides State election officials little time to certify primary election results, resolve any election challenges, and finalize and print ballots in time to meet the mailing deadline for UOCAVA voters.

Despite the hardship waiver's clear terms, New York failed to transmit its UOCAVA ballots by October 1, 2010. The United States contacted State officials in early October 2010, who provided several explanations for the delay, including (1) delays in finalizing and printing the ballots, (2) delays in preparing the ballots for mailing, (3) delays in translating the ballot into other languages, as required by 42 U.S.C. § 1973aa-1a, and (4) unresolved election challenges. They were unable, however, to explain the mailing delays in several counties.

The United States initiated this action on October 12, 2010. At that time, Defendants represented that late mailings occurred in at least nine counties, but that all UOCAVA ballots were mailed no later than October 10, 2010. The Court approved a Consent Decree on October 19, 2010. In that Decree, Defendants agreed to further extend New York's UOCAVA ballot receipt deadline to November 24, 2010. Based on the October 10, 2010 mailing date, a November 24, 2010 receipt deadline provided UOCAVA voters with 45 days of roundtrip ballot transit time.[3]

New York's Primary Election Date Must Be Changed Immediately

Time is running out to remedy this problem for the 2012 election cycle. In the Consent Decree, Defendants committed to seek necessary changes of law or administrative regulation to bring New York into UOCAVA compliance. Consent Decree, at 11-12, Oct. 19, 2010, ECF No. 9. At present, however, nearly two years after the MOVE Act's enactment, New York's legislature has enacted no law to move the State's primary election date, nor has the State taken any other steps to address the structural impediments to meeting UOCAVA's 45-day deadline in future federal general elections.[4] The 2011 legislative session ended on June 24, 2011. On information and belief, the legislature is not scheduled to reconvene before January 2012. See New York State Legislative Session Calendar, available at http://assembly.state.ny.us/leg/?sh=cal; http://www.nysenate.gov/calendar/session/2011-12 (last visited June 28, 2011).

Due to the complexities of New York's election calendar, this issue cannot be left to the next legislative session. As the State explained in its April 23, 2010 waiver application to the Secretary of Defense, "any proposed change to the election calendar during an election year would most certainly impact deadlines that have already passed." Letter from Robert A. Brehm, Co-Executive Director of the New York State Board of Elections to Robert Carey, Federal Voting Assistance Program Director, at 4 (Apr. 23, 2010) [hereinafter "NY Waiver Application"], attached as exhibit B. Numerous electoral deadlines in the months leading up to the primary election are tied to the State's primary election date.[5] The first of these deadlines occurs nearly four months prior to the primary election date; in the 2010

---

[3] The United States is working with the Defendants to determine the extent to which all New York counties afforded UOCAVA voters the full 45-day roundtrip transit time contemplated by the Consent Decree.

[4] New York has already modified its special election procedures to comply with the MOVE Act. 2011 N.Y. Sess. Laws Ch. 4 (McKinney).

[5] See, e.g., N.Y. Elec. Law § 2-120 (deadline for filing of party positions to take place no later than two weeks before first day on which designating petitions for a primary election may be signed); N.Y. Elec. Law §§ 6-134, 6-168, 6-120, 6-164 (deadline for filing designating petitions, acceptance, authorization, and administrative and judicial review of objections to designating petitions); N.Y. Elec. Law §§ 6-104, 6-108, 6-158, 60116, (dates for holding state committee meetings to nominate candidates for statewide office); N.Y. Elec. Law § 6-158 (deadline for holding judicial district conventions); N.Y. Elec. Law §§ 5-210, 5-208 (deadline to register to vote before primary election); N.Y. Elec. Law §§ 8-400, 8-412, 10-106 (deadline for absentee ballot requests).

election cycle this deadline was May 25.  *See* N.Y. Elec. Law § 2-120.  A number of New York's campaign finance limits and periodic reporting requirements are also tied to the primary election date. NY Waiver Application at 3.

Further, the logistical planning and expense required to schedule a statewide election in New York render immediate action imperative.  As the State explained in its 2010 hardship waiver application, last minute rescheduling of its primary election would "compromise[e] [New York's] ability to safely and accurately conduct elections." NY Waiver Application at 2.  New York utilizes over 6,000 polling sites and employs more than 100,000 election workers for each statewide election.  *Id.*  All polling sites "are reserved more than a year in advance of the primary election in order to ensure site availability." *Id.*  The State also makes arrangements for election worker availability and training many months in advance of the primary election.  Given the wide-ranging impact of New York's primary election date, any further delay in modifying the State's election calendar will render such changes effectively impossible.  That New York State will be redistricting prior to the 2012 elections may raise additional logistical issues impacting the State's election calendar and its efforts to comply with the MOVE Act in 2012.

Based on these circumstances, the United States believes a status conference with the Court is appropriate to determine the State's plans for achieving full MOVE Act compliance in time for the 2012 Federal election cycle and, if necessary, to establish an orderly schedule for proceedings to ensure implementation of a timely Court-ordered remedy in 2012.

Conclusion

The United States respectfully requests a status conference at the Court's earliest convenience to address the Defendants' plans for implementing a permanent remedy to the State's MOVE Act violations in time for the 2012 Federal election cycle.

The United States thanks the Court for considering this request.

Respectfully Submitted,

Richard Dellheim
Deputy Chief, Voting Section

cc: All Counsel

4