UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RALPH M. MOHR
5622 Broadway Street
Lancaster, New York 14086

                             Plaintiff

    against                                   Civil Action
                                            File No.: 11-CV-559-S

**ERIE COUNTY LEGISLATURE,** Barbara
Miller-Williams, Chairperson; Robert M.
Graber, Clerk of the Legislature            **BALLOT ACCESS ISSUES**

**CHRISTOPHER C. COLLINS**, as
County Executive of the County of Erie

    and

**COUNTY OF ERIE**
                              Defendants



---

       This is in response to and a supplement to the "Proposal for Ballot Access" submission by Plaintiff Ralph M. Mohr.

I. **General Discussion:**

       As of Thursday, July 28, 2011, the election calendar is two (2) weeks past the last date that petitions designating candidates for party primaries were to be filed with the Board of Elections. The New York State election calendar presumes about 9 ½ weeks from the last date of filing designating petitions and the primary election date (see, Election Law 6-158(1). The subsequent filing of other documents is also detailed therein.

       At this time, the final lines of the proposed districts have yet to be determined by the Court before the entire calendar (at least as to the legislative district

lines) must proceed. The attached general outline of the Board of Elections calendar would <u>begin</u> as of the date the actual district lines are finalized. Since the primary election is forty six (46) days away <u>now,</u> there is simply no reasonable way to use it to nominate party candidates.

Most importantly, at this time there are only fourteen (14) days before all military ballots for the primary must be finalized and mailed. Any changes of the primary calendar would, at the least, violate that timeline, under Article 10 of the Election Law. For innumerable reasons, as outlined in the attached Board of Elections activity timetable, the use of petitions and the September primary to nominate party candidates is highly impractical.

## II. <u>Current Situation Already Provided for Under Election Law 6-116</u>

At this point in time, the boundaries of the eleven (11) legislative districts have yet to be determined. This Court (or a master appointed by the Court) will ultimately determine what those lines are.

Election Law, Section 6-116 addresses the instance where a vacancy is created, that must be filled at the November general election, with less than seven (7) days left in the scheduled designating period remaining. It is provided that each existing political party selects its candidate (as may be provided for by its party rules) for the general election, by the use of a "certificate of nomination". (Election Law 6-156).

This method eliminates the availability of a primary election (see Election Law 6-110). However, that is always the case where the certificate of nomination is used. See generally, Election Law Section 6-114 (special elections); 6-116 (late occurring vacancies); 6-128 (new political parties); Supreme Court convention nominations 6-124 and 6-126. (See generally, Election Law 6-158)

The lack of a primary election, while possibly impacting on a given individual's right to seek a party's nomination, has nonetheless been upheld against constitutional attack. <u>New York State Board of Elections</u> v. <u>Lopez Torres</u>, 552 US 196 (2007)

### III. Suggested "Multiple Access Schemes":

Plaintiff Mohr suggests alternative schemes to place candidate on the (presumably) primary ballot. The cases mentioned are really not particularly instructive.

The Larouche case addressed a (Connecticut) state statute that "recognized candidates" could be placed upon the primary ballot. That case involved a candidate for US President and a judgment as to whether a given candidate had generated enough recognition. In such a case, the office and district outline was known to all potential candidates. In the present case, potential candidates could not have known whether to become a candidate without first knowing the district lines. In any event, there appears to be no reported case where such a remedy was fashioned in the absence of such a state election statute.

The Molinari case again involved the Republican nomination for US President. And, in that case, the Court ultimately allowed certain candidates who didn't meet the stringent signature requirements to be placed on the ballot. However, the Court noted that "the breadth of this relief reflects in part the agreement of the parties". Since all the Republican candidates agreed to such relief, it hardly provides precedent for a court-created remedy of simply "requesting" to be put on the ballot.

### IV. Suggested Use of Party Caucus:

One suggested alternative for a party to nominate its candidate for each legislative district is to direct a "caucus" of party members who reside in each district. It is suggested this would be similar to the procedures outlined in Election Law 6-108.

There is no precedent known for the use of such a procedure for a remedy. The intent behind Election Law 6-108 is to permit such "direct democracy" in meetings in relatively small jurisdictions.

Indeed, by its very provisions, the state law does not envision its use in large populated counties such as Erie County – it is permitted <u>only</u> in counties of less than 750,000 population.

Under the newly approved eleven (11) member districting requirement, the population of each district will average 83,549. With the current active voter registration at 569,665, an average legislative district will have at least 51,788 voters.

Even assuming a 50% share of a districts voters belonging to one major party, the potential number of caucus participants will be at least 25,894

In many areas of the City of Buffalo, the number of Democrats in a district is considerably higher than 50%. In the current fifteen (15) member districts, the percentage of Democratic voters in the so-called "city districts"(where a majority of the voters are City of Buffalo residents) are as follows:

| District# | Total # of voters | Total # of Democrats | % Democrat |
|---|---|---|---|
| 2 | 33,310 | 21,534 | 65% |
| 3 | 28,887 | 23,835 | 83% |
| 6 | 26,871 | 18,202 | 68% |
| 7 | 33,324 | 27,334 | 82% |
| 11 | 37,095 | 20,661 | 56% |

The same could be true for heavily Republican districts, as may ultimately be drawn in the outer areas of the county:

| District# | Total # of voters | Total # of Republicans | % Republican |
|---|---|---|---|
| 4 | 46,620 | 19,960 | 43% |
| 5 | 44,010 | 16,073 | 37% |
| 13 | 39,804 | 15,866 | 40% |

A legislative district whose enrollment is 80% from one major party could have over 40,000 voters to be notified to come to a caucus and most districts would be over 25,000. The logistical problems for such a huge political meeting are obvious.

Simply stated, the use of the "caucus" could require the notification of thousands of potential party voters to come to a pre-determined venue to select a party's nominee.

Issues such as the cost of notifying voters, the cost of conducting such a meeting, security concerns, etc. make such a suggestion unacceptable.

Indeed, given the policy of New York State against such "direct democracy", such a proposal is generally unknown in our political system for large political sub-divisions – as opposed to small towns and villages.

### V. Alternative Access to General Election Ballot

Although a candidate may be precluded from obtaining a party certificate of nomination without a party primary, there always remains the Independent Nominating Petition procedure under Election Law 6-140, et al. and 6-158(9).

Under the current calendar, such petitions must be filed no later than August 23, 2011. Depending upon the time within which the Court finalizes the district lines, some adjustment of that date could be made without severe impact on the general election timetable.

The ability to gain access to the general election ballot through the use of the independent nominating petition process, adequately addresses a candidate's First Amendment right of association. New York State Board of Elections, et al v. Lopez Torres, supra.

### VI. Conclusion:

Given the time constraints imposed by the approaching September 13th primary election, the use of the primary election (whether by designating petitions or

otherwise) is practically impossible and jeopardizes the proper administration of that election for all parties and candidates.

The use of certificates of nomination eliminates the disruption of the primary election's timetable and would allow the Court the necessary time to complete work on the district lines and for all of the other necessary work thus created, to be performed by the Board of Elections.

The Court should thus invoke the authority of Election Law 6-116 and direct the use of certificates of nominations from all six (6) of the recognized political parties, for the yet to be determined new county legislative districts.

Dated, July 27, 2011
Buffalo, New York

Respectfully Submitted,

Dennis E. Ward, *Pro Se*
Proposed Intervenor Defendant
134 W. Eagle Street
Buffalo, New York 14202
(716) 858-7787

I herby certify that I had the foregoing document served via hand delivery, and electronic email to the following counsel:

Ralph M. Mohr, Esq.
5662 Broadway Street
Lancaster, New York 14086
Ralph.Mohr@erie.gov

Jeremy A. Colby, Esq.
County Attorney
95 Franklin Street Room 1634
Buffalo, NY 14202
Jeremy.Colby@erie.gov

Anthony G. Marecki
Assistant County Attorney
95 Franklin Street Room 1634
Buffalo, NY 14202
Anthony.Marecki@erie.gov

Marc C. Panepinto, Esq.
Sean Cooney, Esq.
Jeffrey Marion, Esq.
Jerome Schad, Esq.
1600 Main Place Tower
350 Main Street
Buffalo, New York 14202
(716) 852-1888
mpanepinto@cldplaw.com
scooney@cldplaw.com
Jeff@jeffmarionlaw.com
Jerome.schad91@gmail.com

Brian M. Melber, Esq.
Personius Melber, LLP
2100 Main Place Tower
Buffalo, New York 14202
Bmm@personiusmelber.com

| Process | Step | Time |
|---|---|---|
| Metes and Bounds | | |
| | Determine District layouts | Day 1 |
| Election District Reconfiguration | | |
| | Outline (Entire Municipalities) | Day 2 |
| | Outline (Splits) [Overlay Congressional; State Senate; State Assembly; Town; Ward; School District Lines] | Day 3-6 |
| | Map Contiguous District Lines | Days 7-12 |
| | Check integrity of mapped districts | Day 13 |
| | Print District layouts for Split Municipalities | Day 13 |
| Voter Migration | | |
| | Reassign non-Split Municipalities | Day 14-15 |
| | Reassign Split Municipalities | Day 16-25 |
| | Assign Apportionment to New Legislative District Alignment | Day 26 |
| Polling Location Adjustment | | |
| | Assign Polling Locations to split/new ED's | Day 27-30 |
| | Polling Location Survey [Determine that polling location meets hava and spacing requirements] | Day 31 |
| | Polling Location Consolidation | Day 32-34 |

| Ballot Production | | |
|---|---|---|
| | Layout of ballot [Number of ballot styles may vary time of layout] | Day 35-37 |
| | Ballot Testing [DS200/Automark configuration and test decks] | Day 38-45 |
| | Design Polling Location Placards [Ballot wall facsimile, table markers] | Day 38-40 |
| | Printing Ballots [print/finishing service] | Day 45-51 |
| | Media Production [program chips/digital media] | Day 45-48 |
| | Ballot and supply packaging | Day *-53 |

| Polling Location Setup | | |
|---|---|---|
| | Machine Supply Delivery | Day 54-57 |

| Petition Process [based upon a hypothetical court imposed seven (7) day signature gathering process] | | |
|---|---|---|
| | Signature Collection | Day 1-7 |
| | Filing | Days 8-10 |
| | Objection-General | Days 9 |
| | Acceptances | Day 9 |
| | Objection-Specific | Days 9-12 |
| | Declinations | Days 9-12 |
| | Party Authorizations | Day 13 |
| | BOE Objection Processing | Day 13-14 |
| | BOE Hearings | Day 17-18 |
| | OTB/Independent Nom | Days 18-25 |
| | Objection-General | Day 26 |
| | Objection-Specific | Day 26-29 |
| Ballot Draw | | Day 33 |

\* Process time is ongoing process
Last possible Date of Completion

| | |
|---|---|
| Printing Pollbooks | 9/5 |
| Sending Military Absentee ballots | 8/11 |
| Sending Domestic Absentee ballots | 9/6 |
| Printing Ballots | 9/5 |
| Machine/Supply Delivery | 9/12 |