UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RALPH M. MOHR,

                       Plaintiff,

v.

ERIE COUNTY LEGISLATURE,

CHRISTOPHER C. COLLINS,
COUNTY OF ERIE,
and DENNIS E. WARD

                       Defendants.
_____

DENNIS F. CHAPMAN,

                       Plaintiff,

v.

COUNTY OF ERIE,

                       Defendant.
_____

**MEMORANDUM ON BEHALF OF DEFENDANT ERIE COUNTY LEGISLATURE REGARDING REDISTRICTING AND REAPPORTIONMENT**

Civ. No. 11-CV-559

**PRELIMINARY STATEMENT**

      This Memorandum is submitted on behalf of Defendant Erie County Legislature with respect to the redistricting/reapportionment of the legislative districts for the County of Erie. To the extent the Court may consider issuing a decision establishing eleven (11) new legislative districts for the County of Erie in the context of this action, it is respectfully submitted that for the reasons set forth herein the Court should adopt legislative districts which most nearly resemble those described in Erie County Local Law 5-1, the redistricting/reapportionment plan voted on and passed by a vote of the majority of the Erie County Legislature. As is more fully set forth herein, Local Law 5-1 comports with the applicable authorities and considerations for a redistricting and reapportionment of legislative districts, and better satisfies those legal requirements than other proposed plans. Moreover, Local Law 5-1 best represents the legislative will of the voters of Erie County as

expressed through their representatives, a majority of the Erie County Legislature. For these reasons, it is respectfully submitted that any plan adopted by the Court should be substantially consistent with the redistricting and reapportionment plan approved by the Legislature.

Defendant Erie County Legislature asks that the Court consider the following factors in this regard.

### LEGISLATIVE WILL OF ERIE COUNTY VOTERS

Only one proposed redistricting/reapportionment plan has been affirmatively adopted and approved by a branch of the Erie County Government. As the Court is likely aware, the ordinary process prescribed by law for the adoption of a redistricting and reapportionment plan for the legislative districts of a county in the State of New York consists of the passage of a local law by a majority vote of the Legislature, subject to the veto power of the County Executive. While that process has not resulted in the enactment of a local law in this case, it should not be entirely disregarded by the Court in addressing this issue. Local Law 5-1 was voted on and approved by a majority vote of the Erie County Legislature on or about June 16, 2011. A certified copy of County of Erie Local Law Int. No. 5-1 (2011) is attached hereto as **Exhibit A**. A set of maps and a table of demographic and statistical data which illustrate the legislative districts of Local Law 5-1 are attached hereto as **Exhibit B**[1]. Significantly, the approval of Local Law 5-1 by the Legislature on that date would have been in time for the implementation of this redistricting and reapportionment plan, had it not been vetoed by the County Executive.

---

[1] Exhibit B consists of documents previously filed in this action, specifically Docket Number 19, Exhibits 39 through 51.

Therefore, Local Law 5-1 represents the only plan formally approved by a branch of Erie County Government through the normal process provided by law for the redistricting and reapportionment of the legislative districts of the County. The representatives of a majority of the voters of Erie County fashioned and approved this plan. Certainly, it is relevant that it was not accepted by the County Executive. Nevertheless, the legislative will of County voters, as expressed by the County Legislature, is an appropriate consideration for the Court to regard. This is particularly so where the options and alternatives being considered involve a comparison among plans which each satisfy the minimum legal requirements, such that none is unlawful or would be subject to attack on either constitutional or statutory grounds.

## ONE-PERSON ONE-VOTE

It is well settled that legislative redistricting and reapportionment plans must contain substantially equal populations in order to comply with the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362 (1964); *Rodriguez v. Pataki*, 2002 WL 1058054 (S.D.N.Y. 2002); *Kimble v. County of Niagara*, 826 F.Supp. 664 (W.D.N.Y. 1993). It is equally well settled that plans in which the variation in population among the several districts does not exceed 10% are presumed to be constitutional. *Brown v. Thomson*, 462 U.S. 835, 842, 103 S.Ct. 2690, 2695 (1983); *Cecerre v. County of Nassau*, 274 F.Supp.2d 308 (E.D.N.Y. 2003); *Kimble, supra.* That presumption extends not only to legislative's enacted plans but also those adopted or approved by a Court. *Kimble*, *supra*.

The variation of population among the eleven (11) districts of Local Law 5-1 comports well with the One Person One Vote requirement of the Fourteenth Amendment. The population of those

eleven (11) districts ranges from 80,980 to a maximum of 85,165, representing a range of only 4,185 and a deviation of just 5.04%. The variation of population among the eleven (11) districts in Local Law 5-1, therefore, is well below the presumption threshold. In fact, the very low variation of population among these districts demonstrates that this plan should be strongly favored in light of Fourteenth Amendment One-Person One-Vote considerations.

### MINORITY VOTING STRENGTH/VOTING RIGHTS ACT OF 1965

Redistricting and reapportionment plans also must satisfy the requirements of the Equal Protection Clause, the Fifteenth Amendment to the United States Constitution and the Voting Rights Act of 1965. *Kimble*, *supra*. Consideration of these requirements in the context of fashioning a redistricting and reapportionment plan for the Erie County Legislature consisting of eleven (11) districts should address two (2) minority voting communities, African-American and Hispanic. In general, the imperatives of the Voting Rights Act in "may be accomplished through the creation of a majority-minority voting district that maximizes the opportunity of members of the affected group to elect representatives of their choice to government office." *Kimble*, *supra*, citing *United Jewish Organizations v. Carey*, 43 U.S. 144, 97 S.Ct. 996 (1977); *Garza v. County of Los Angeles*, 918 F.2d 763, 776 (9th Cir. 1990), *cert. den.*, 498 U.S. 1028, 111 S.Ct. 681 (1991).

This factor is addressed in Local Law 5-1 through the creation of two (2) legislative districts out of the total of eleven (11). Those districts are designated District 8 and District 9. Local Law 5-1 District 9 is a majority-minority African-American district with African-Americans comprising 60.15% of the voting age population (and 64.51% of the total population). **Exhibit B**. This district also contains a small Hispanic population of 3.59% of the voting age population (and 4.11% of the

total). *Id.* The second relevant district is District 8, which contains a substantial percentage of African-American voters and the overwhelming concentration of Hispanic voters. *Id.* Specifically, in Local Law 5-1 District 8, some 42.60% of the voting age population is African-American and 15.30% of the voting age population is Hispanic. *Id.* Therefore, 57.90% of the voting age population in district 8 is either African-American or Hispanic. More significantly, Local Law 5-1 in the design of Districts 8 and 9, avoids to a very substantial degree any dilution of the voting age Hispanic population. While there is not a sufficient number of Hispanic voters in the county to create a majority-minority Hispanic district, Local Law 5-1 creates a district within which Hispanic voters are a substantial and potentially influential minority, particularly if in coalition with another substantial minority of African-American voters. Is this light, Local Law 5-1 District 8 may be viewed as what the Supreme Court has termed an "influence district" or as described by the Souther District a "minority coalition district." *Bartlett v. Strickland*, 556 U.S. 1, 129 S.Ct. 1231 (2009); *Rodriguez v. Pataki*, 2002 WL 1058054, *5. Such districts, even if not mandated or required by the Voting Rights Act, are certainly not disfavored in the context of the goal of ensuring appropriate minority voting strength and avoiding the dilution of minority voting influence.

By contrast, the plan advocated by Plaintiff Ralph Mohr and referred to in Mr. Mohr's submission as Local Law 3-1 (Dkt. 32), includes two (2) districts which each divide, and therefore dilute, both the African-American and Hispanic voter populations. Attached hereto as **Exhibit B** is a table which compares the demographics of Districts 8 and 9 in Local Law 5-1 with Districts 3 and 7 in Local Law 3-1[2]. In this competing plan, District 3 contains some 36,605 African-American

---

[2] The figures cited in this paragraph from Exhibit B have been confirmed by cross reference to the Local Law 3-1 documents previously filed in this action. *See* Docket 19, Exhibits 65 and 73.

5

voters, comprising 56.29 % of that district, while District 7 contains 30,005 African-American voters comprising 49.45% of that district. Hispanic voters are also divided almost equally between the two districts, with 5,097 in District 3 and 6,792 in District 7. Even if these districts do not violate the Voting Rights Act, they do give rise to a more substantial risk of litigation under the Voting Rights Act than the districts incorporated in Local Law 5-1.

Accordingly, Local Law 5-1 comports best with the Voting Rights Act, and advances the interest of protecting minority voting strength best, among the plans previously proposed.

## MUNICIPAL HOME RULE LAW §10 AND DIVISION OF TOWNS

Another relevant factor is the statutory requirement under New York Municipal Home Rule Law §10 which provides, generally, that a redistricting and reapportionment plan should not divide towns between two or more districts unless the population of the town is equal to 110% or more of a full ratio per representative. *Kimble*, *supra.* More generally, this statute expresses a policy judgment by the New York State Legislature which favors maintaining towns intact within legislative districting plans.

Local Law 5-1 addresses and comports with the statutory requirement of the Municipal Home Rule Law and appropriately honors the policy behind that law. Under Local Law 5-1, other than the City of Buffalo, only three (3) townships are divided. The population of Amherst exceeds 110% of a legislative district share and, therefore, Amherst must be divided in order to comport with the One-Person One-Vote principle. The Town of Tonawanda is divided in order to create a district which includes Grand Island and still comports with the One-Person One-Vote principle. The alternative

would have been to combine Grand Island with a portion of the City of Buffalo, which was contrary to a resolution passed by that town's board. Cheektowaga is divided in two places and for two distinct reasons. An area in the northwest corner of Cheektowaga is attached to District 9 in the City of Buffalo in order to incorporate a significant population of African-American voters in that district and to further the goals of the Voting Rights Act. The other section of Cheektowaga which is divided consists of the Village of Depew, which is located partly in the Town of Cheektowaga and partly in the Town of Lancaster. In order to keep the Village of Depew in a single district, it is necessary to divide either Lancaster or Cheektowaga at the village line.

Therefore, the redistricting and reapportionment plan in Local Law 5-1 comports with and serves the goals of the Municipal Home Rule Law in maintaining, to the maximum degree feasible given the other redistricting and reapportionment requirements, the need to keep townships intact within a district. By comparison, Local Law 3-1 includes divisions five towns: Hamburg, Cheektowaga (parts of which are located in four separate districts), Amherst (parts of which are located in four separate districts), Lancaster and Tonawanda. Doc. 19, Exhibit 59.

## COMPACT AND CONTIGUOUS DISTRICTS

Another appropriate consideration is the creation of compact and contiguous districts. See, *Rodriguez v. Pataki*, *supra*; *Kimble*, *supra*. The districts created under Local Law 5-1 are compact and contiguous, in so far as the other superior redistricting and reapportionment requirements will permit. Looking at the least compact districts within the plan one can see that the shape and boundaries of those districts are the result of the effort to satisfy to the fullest degree possible the superior requirements of One-Person One-Vote and the Voting Rights Act.

For example, District 8 consists of two compact areas made contiguous by a relatively narrow corridor running parallel to Highland Avenue.  **Exhibit B**.  That district, however, is one of two districts specifically designed to maximize compliance with the Voting Rights Act and to avoid unnecessarily diluting minority voting strength.  The same is true of District 9.  Another district that consists of two reasonably compact areas made contiguous by a narrow corridor is District 2.  This district consists of the entirety of Orchard Park, the entirety of Lackawanna and a portion of the City of Buffalo, consisting mostly of an area commonly known as South Buffalo.  **Exhibit B**.  The shape of this district is a result of keeping the neighboring towns of Hamburg and Orchard Park intact, each within a single district, while combining Orchard Park with a portion of the City of Buffalo (which must be divided) in order to create a district with enough voters to satisfy the One-Person One-Vote principle.  All of the neighboring towns which border Orchard Park are also contained within a single legislative district including West Seneca, Elma, Aurora, Colden and Boston.  Meanwhile, the northern-most section of District 2, which forms the shape of a peninsula, is surrounded by District 8 and, again, that shape results from the combined requirements of One-Person One-Vote and the Voting Rights Act.  In similar fashion, District 4 is comprised of the neighboring Towns of Elma and West Seneca (which each are kept entirely within one district) combined with a portion of the City of Buffalo.  This was also done to create a district with the requisite number of voters to comply with One-Person One-Vote.

Representatives of some of the towns contained in District 3 have expressed concern about the geographic size of that district.  However, the population of that district is 81,587, which is in the lower part of the range among all eleven districts.  Each of the towns included in this district is also undivided.

## OTHER CONSIDERATIONS

There are other, lesser, considerations which can be relevant including "respect for pre-existing political subdivisions" and "maintenance of the cores of existing districts, communities of interest, and political fairness." *Rodriguez v. Pataki*, *supra*. These considerations are of the sort which typically are addressed best through the political process and which, the Supreme Court has observed, courts are less suited to attend to than the other branches of Government. *Bartlett v. Strickland*, 556 U.S. at _____, 129 S.Ct. at 1245. Here, however, it is reasonable to conclude that such political considerations have to a degree found expression in Local Law 5-1 which, as already indicated, is the result of a legislative process and had the approval of a majority of the elected legislators of Erie County.

## CONCLUSION

Defendant Erie County Legislature readily acknowledges the Court's authority to independently consider and evaluate the interlocking legal imperatives and values in addressing this issue in the context of this lawsuit. It is respectfully requested, however, that the Court endeavor to give appropriate regard to Local Law 5-1 in doing so, and wherever possible to adopt and incorporate the judgement of the Erie County Legislature as expressed by a vote of a majority of the elected legislators as found in Local Law 5-1.

In addition, in the event the Court determines some additional submission of the parties would be useful in considering on this issue, Defendant Erie County would welcome the opportunity to further address any factual matter or point of law identified by the Court, and will do so within any schedule directed by the Court.

Dated: Buffalo, NY
      August 3, 2011.

                                      **/s/ Brian M. Melber**
                                      Brian M. Melber, Esq.
                                      PERSONIUS MELBER LLP
                                      *Attorneys for Defendant*
                                         ERIE COUNTY LEGISLATURE
                                      2100 Main Place Tower
                                      Buffalo, NY  14202
                                      (716)  855-1050
                                      bmm@personiusmelber.com

| | |
|---|---|
| TO:  Ralph Mohr<br>*Plaintiff, Pro Se*<br>134 West Eagle Street<br>Buffalo, NY 14202<br><br>Jeffrey E. Marion<br>Law Offices of Jeffrey E. Marion, Esq.<br>*Attorneys for Plaintiff*<br>  DENNIS CHAPMAN<br>17 Beresford Court<br>Williamsville, NY 14221<br>(716) 565-2000<br>jeff@jeffmarionlaw.com<br><br>Marc C. Panepinto, Esq.<br>Cantor Lukasik Dolce & Panepinto PC<br>*Attorneys for Plaintiff*<br>DENNIS CHAPMAN<br>1600 Main Place Tower<br>Buffalo, NY 14202<br>(716) 852-1888<br>mpanepinto@cldplaw.com | Jerome D. Schad, Esq.<br>*Attorney for Plaintiff*<br>  DENNIS CHAPMAN<br>199 Meadowview Lane<br>Williamsville, NY 14221<br>jerome.schad91@gmail.com<br><br>Dennis E. Ward<br>*Defendant, Pro Se*<br>134 West Eagle<br>Buffalo, NY 14202<br><br>Jeremy A. Colby, Esq.<br>Anthony Girolamo Marecki<br>Erie County Attorney<br>*Attorneys for Defendants*<br>  CHRISTOPHER C. COLLINS and<br>COUNTY OF ERIE<br>95 Franklin Street, Room 1634<br>Buffalo, NY 14202<br>anthony.marecki@erie.gov<br>jeremy.colby@erie.gov |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of August, 2011, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| Jeremy A. Colby, Esq.<br>Anthony Girolamo Marecki<br>Erie County Attorney<br>*Attorneys for Defendants*<br> CHRISTOPHER C. COLLINS and<br> COUNTY OF ERIE<br>95 Franklin Street, Room 1634<br>Buffalo, NY 14202<br>anthony.marecki@erie.gov<br>jeremy.colby@erie.gov<br><br>Jerome D. Schad, Esq.<br>*Attorney for Plaintiff*<br>  DENNIS CHAPMAN<br>199 Meadowview Lane<br>Williamsville, NY 14221<br>jerome.schad91@gmail.com | Jeffrey E. Marion<br>Law Offices of Jeffrey E. Marion, Esq.<br> *Attorneys for Plaintiff*<br>   DENNIS CHAPMAN<br>17 Beresford Court<br>Williamsville, NY 14221<br> (716) 565-2000<br>  jeff@jeffmarionlaw.com<br><br>Marc C. Panepinto, Esq.<br>Cantor Lukasik Dolce & Panepinto PC<br> *Attorneys for Plaintiff*<br>   DENNIS CHAPMAN<br>1600 Main Place Tower<br>Buffalo, NY 14202<br>(716) 852-1888<br>mpanepinto@cldplaw.com |

And, I hereby certify that on the 3rd day of August, 2011, I forwarded the foregoing document via hand delivery to the following:

| | |
|---|---|
| Ralph Mohr<br>*Plaintiff, Pro Se*<br>134 West Eagle<br>Buffalo, NY 14202 | Dennis E. Ward<br>*Defendant, Pro Se*<br>134 West Eagle<br>Buffalo, NY 14202 |

                                            **/s/ Brian M. Melber**
                                            Brian M. Melber, Esq.
                                            PERSONIUS MELBER LLP
                                            *Attorneys for Defendant*
                                               ERIE COUNTY LEGISLATURE

2100 Main Place Tower
Buffalo, NY  14202
(716)  855-1050
bmm@personiusmelber.com